# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| JOSE PINEDA, JOSE MONTENEGRO, MARCO | ) | |
| LOPEZ, and JOSE HERNANDEZ on behalf of | ) | |
| themselves and all others similarly situated, | ) | |
|  | ) | C.A. No. |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| SKINNER SERVICES, INC. d/b/a SKINNER | ) | |
| DEMOLITION, THOMAS SKINNER, DAVID | ) | |
| SKINNER, ELBER DINIZ, and SANDRO SANTOS | ) | |
|  | ) | |
| Defendants, | ) | |

_____)

## CLASS AND COLLECTIVE ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1.      This is an action seeking payment of wages, including but not limited to earned but unpaid compensation for straight time hours worked, overtime premiums, and hourly minimum wages due to the Plaintiffs and other similarly situated workers under federal and Massachusetts law.

2.      At times relevant to this litigation, the Plaintiffs, and those similarly situated, have worked for Defendant Skinner Services, Inc. d/b/a Skinner Demolition (hereinafter "Skinner Services") as manual laborers, performing demolition and related labor at the Defendants' Avon, Massachusetts shop and its  construction sites.

3.      Although the Plaintiffs and those similarly situated have worked a significant majority of their time at Skinner Services construction sites in Massachusetts, the Plaintiffs and

1

those similarly situated have also worked in other states, including New York, Maine, New Hampshire, and Connecticut.

4.      According to its website, "Skinner Demo . . . operates throughout New England and [a] few other states, working on commercial, industrial, and residential projects of any size, with over 15 well trained and equipped crews, a fleet of 20 vehicles, Roll-Off Trucks, Skid Steers, etc." http://www.skinnerdemo.com/about (last visited 10/17/16).

5.      Notwithstanding Skinner Services' large size and prominence in the construction industry,  it has consistently failed to pay compensation owed to the Plaintiffs and those similarly situated, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq., M.G.L. c. 149, § 148 (Non-Payment of Wages), M.G.L. c. 151 § 1A (Overtime), M.G.L. c. 151, § 1 (minimum hourly wages), and 454 CMR 27.04(4) (travel costs).

## JURISDICTION AND VENUE

6.      Jurisdiction over this action is conferred on this court under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7.      Venue in this district court is appropriate pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to this claim occurred primarily in this district.

## PARTIES

8.      Plaintiff Jose Pineda is a resident of Central Falls, Rhode Island.

9.      Plaintiff Jose Montenegro is a resident of Central Falls, Rhode Island.

10.     Plaintiff Marco Lopez is a resident of Central Falls, Rhode Island.

11.     Plaintiff Jose Hernandez is a resident of Central Falls, Rhode Island.

12.     All of the Plaintiffs and those similarly situated ("Class Plaintiffs") worked as manual laborers for Defendant Skinner Services at its construction sites.

13.     In addition to providing manual labor on Defendant Skinner Services'
construction sites, between at least August 5, 2013, and sometime in or around January, 2016,
some of the Class Plaintiffs were assigned to drive their crews of employees from Defendant
Skinner Services' headquarters in Avon, Massachusetts, ("Skinner Headquarters") to their first
construction sites of the day and from their final construction sites of the day back to Skinner
Headquarters.  Class Plaintiffs who were assigned to drive crews by Defendant Skinner Services
are hereinafter referred to as "Driver Plaintiffs."

14.     Driver Plaintiffs' crews included other Class Plaintiffs who were driven by
Defendant Skinner Services, its agents, and employees, including but not limited to Driver
Plaintiffs, from Skinner Headquarters to their first construction sites of the day and from their
final construction sites of the day back to Skinner Headquarters.  Class Plaintiffs who did not
drive construction crews on behalf of Defendant Skinner Services are hereinafter referred to as
"Non-Driver Plaintiffs."

15.     Defendant Skinner Services, Inc., d/b/a Skinner Demolition (hereinafter "Skinner
Services") is a domestic corporation organized in 2007 under the laws of Massachusetts.
Defendant Skinner Services' principal place of business is located at 155 Bodwell Street, Avon,
MA 02322.  Defendant Skinner Services is a construction employer engaged in demolition work.
Skinner Services' Registered Agent is Thomas Skinner.

16.     Defendant Skinner Services performs demolition work on construction sites
principally in Massachusetts, as well as in New Hampshire, Maine, Rhode Island, Connecticut,
and New York.

17.     According to its website and corporate filings with the Massachusetts Secretary of State, Defendant Skinner Services was founded by Defendants David Skinner, Thomas Skinner, and Elber Diniz. See http://www.skinnerdemo.com/about (last visited 10/17/16).

18.     Defendant Thomas Skinner resides at 94 Green St., Canton MA 02021.

19.     Defendant Thomas Skinner is a co-owner of Defendant Skinner Services.

20.     According to Defendant Skinner Services' most recent corporate filings, Defendant Thomas Skinner is the President, Treasurer, Secretary, and Director of Skinner Services. He has served in these roles since it was founded.

21.     At times relevant to this litigation[1], Defendant Thomas Skinner has assigned at least some of the Plaintiffs and those similarly situated to work crews.

22.     At times relevant to this litigation, Defendant Thomas Skinner has assigned work crews to report to particular construction sites.

23.     At times relevant to this litigation, Defendant Thomas Skinner has supervised work performed by at least some of the Plaintiffs and those similarly situated at Defendant Skinner Services' construction sites.

24.     At times relevant to this litigation, Defendant Thomas Skinner has set the hourly wage rates of at least some of the Plaintiffs and/or those similarly situated.

25.     On information and belief, Defendant David Skinner resides in Braintree, Massachusetts.

26.     Defendant David Skinner co-founded Defendant Skinner Services.

---

[1] "Times relevant to this litigation" includes any date within the relevant time period for which the Defendants may be held liable for failing to timely pay wages at agreed to wage rates, minimum wages, and overtime under Massachusetts and federal law.  The Plaintiffs filed an administrative complaint with the Office of the Attorney General of Massachusetts on August 5, 2016, which remained pending until the date the Plaintiffs each received a private right of action letter, on November 1, 2016, the day before the instant complaint was filed.  Therefore, "times relevant to litigation" is inclusive of August 5, 2013 to the present date.

27.     Defendant David Skinner is a co-owner of Defendant Skinner Services.

28.     At times relevant to this litigation, Defendant David Skinner has estimated and bid on construction jobs on behalf of Defendant Skinner Services.

29.     At times relevant to this litigation, Defendant David Skinner has negotiated and signed contracts for demolition services on behalf of Defendant Skinner Services.

30.     At times relevant to this litigation, Defendant David Skinner has addressed and adjusted complaints by at least some of the Plaintiffs and those similarly situated regarding inaccuracies in their paychecks on behalf of Defendant Skinner Services.

31.     At times relevant to this litigation, Defendant David Skinner has supervised the work of at least some of the Plaintiffs and those similarly situated at Defendant Skinner Services construction sites.

32.     On information and belief, Defendant Elber Diniz resides in Milton, Massachusetts.

33.     Defendant Diniz co-founded Defendant Skinner Services.

34.     Defendant Diniz is a co-owner of Defendant Skinner Services.

35.     At times relevant to this litigation, Defendant Elber Diniz has served as a manager for Defendant Skinner Services' operations.

36.     At times relevant to this litigation, Defendant Diniz has routinely assigned at least some of the Plaintiffs and those similarly situated to their work crews and ordered those work crews to report to particular construction sites.

37.     At times relevant to this litigation, Defendant Diniz has directly supervised work performed by at least some of the Plaintiffs and those similarly situated at Defendant Skinner Services' construction sites.

5

38.     Defendant Diniz hired Plaintiffs Pineda, Lopez, Montenegro, and Hernandez to work at Defendant Skinner Services.

39.     At times relevant to this litigation, Defendant Diniz has set the hourly wage rates of at least some of the Plaintiffs and those similarly situated.

40.     On information and belief, Defendant Sandro Santos resides in Massachusetts.

41.     At times relevant to this litigation, Defendant Santos has directly supervised at least some of the Plaintiffs and those similarly situated.

42.     At times relevant to this litigation, Defendant Santos has served as a manager for Defendant Skinner Services.  In this role, Defendant Santos has been responsible for billing customers for services rendered by and on behalf of Defendant Skinner Services.

43.     At times relevant to this litigation, Defendant Santos has processed timesheets and payroll for Skinner Services.

## FACTUAL ALLEGATIONS – MINIMUM WAGE

44.     At all times relevant to this litigation, the federal minimum wage under the Fair Labor Standards Act was $7.25 per hour.

45.     From January 1, 2008, until December 31, 2014, the state minimum wage under the Massachusetts Fair Wage act was $8.00 per hour.

46.     From January 1, 2015, until December 31, 2015, the state minimum wage under the Massachusetts Fair Wage Act was $9.00 per hour.

47.     From January 1, 2016, until present, the state minimum wage under the Massachusetts Fair Wage Act was $10.00 per hour.

## FACTUAL ALLEGATIONS – JOSE PINEDA

48.     Sometime in or around 2009, Plaintiff Jose Pineda was hired to work at Defendant Skinner Services.

49.     Mr. Pineda's wage rate was initially set at $13/hour.

50.     In or around 2012, Mr. Pineda's wage rate was increased to $14/hour.

51.     Sometime in 2013, Mr. Pineda's wage rate was increased again to $15/hour.

52.     In or around late 2015, Mr. Pineda's wage rate was raised to $16/hour.

53.     Starting before August 5, 2013 and continuing until at least sometime in or around January 2016, Skinner Services routinely required Mr. Pineda to report to Skinner Headquarters at the beginning of each workday before traveling to any of Defendant Skinner Services' construction sites.

54.     Between August 5, 2013 and sometime in or around January 2016, Mr. Pineda was routinely required to report to Skinner Headquarters by or before 5:45 A.M.

55.     Between August 5, 2013 and sometime in or around January 2016, Mr. Pineda received his daily crew and construction site assignments from Defendants Diniz, Thomas Skinner, or another Skinner manager after he arrived at Skinner Headquarters each morning.

56.     Between August 5, 2013 and sometime in or around January 2016, Mr. Pineda was required by Defendant Skinner Services to wait at Skinner Headquarters from the time he arrived until his work crew was assigned and instructed to leave for their construction site.

57.     Between August 5, 2013 until sometime in or around January 2016, Defendant Skinner Services assigned Mr. Pineda to drive his work crew to their assigned construction sites

and back to Skinner Headquarters each day. Generally, Mr. Pineda used his own car to drive his work crew to and from Skinner Headquarters and construction sites.[2]

58.     Between August 5, 2013 and sometime in or around January 2016, Mr. Pineda was assigned to drive other workers not assigned to his crew, supervisors, supplies or equipment to and from Defendant Skinner Services construction sites, using his car, on an *ad hoc* basis.

59.     Since sometime in or around January 2016, Mr. Pineda has occasionally been required by Defendant Skinner Services to drive his work crew, other Skinner employees, supplies and other equipment using his car between Skinner Headquarters and/or construction sites.

60.     Between August 5, 2013 and sometime in or around January 2016, Mr. Pineda's travel time between Skinner Headquarters and his first construction site assignment fluctuated from between approximately 45 minutes and 3 hours each day.

61.     Between August 5, 2013 and sometime in or around January 2016, Mr. Pineda's travel time between his last construction site assignment and Skinner Headquarters fluctuated between approximately 45 minutes and 3 hours each day.

62.     Between August 5, 2013 and sometime in or around January 2016, Defendant Skinner Services was aware of when Mr. Pineda returned with his crew from his last construction site assignment for the day to Skinner Headquarters.

63.     After sometime in or around January 2016 and continuing to the present date, Mr. Pineda was routinely given construction site assignments in advance of the commencement of the workday and instructed to meet his crew at his assigned construction sites.

---

[2] Other Driver Plaintiffs drove either their own vehicles or Defendant Skinner Services' vehicles.

64.     At all times relevant to this litigation, Mr. Pineda was not allowed to "punch in" to begin his "on the clock" work time until he arrived at and reported to his first construction site for the day.

65.     At all times relevant to this litigation, Mr. Pineda was required to punch out when he left his final construction site for the day. This included times in which he was required by the Company to drive other employees to and from Skinner Headquarters and/or other locations after finishing work at his last construction site for the day.

66.     At all times relevant to this litigation, Mr. Pineda routinely worked at least forty (40) hours a week on Defendant Skinners Services' construction sites and/or traveling between construction sites during the workday.

67.     At all times relevant to this litigation, Mr. Pineda occasionally worked over 40 hours a week Defendant Skinners Services' construction sites and/or traveling between construction sites during the workday.

68.     At all times relevant to this litigation, Mr. Pineda worked for Defendant Skinner Services 5-6 days a week, year round.

69.     Between August 5, 2013 and the present date, in certain weeks, Defendant Skinner Services did not pay Mr. Pineda any wages and/or overtime premiums for a portion of hours worked on Skinners' construction sites and traveling between construction sites during the workday.

70.     To date, Mr. Pineda has not been paid any wages and/or overtime premiums due for the hours each day between when he reported to Skinner Headquarters and the time he left for Skinner Services' construction sites, for the period August 5, 2013 to sometime in or around January 2016.

71.     To date, Mr. Pineda has not been paid all wages and/or overtime premiums due for time expended traveling between Skinner Headquarters and Defendant Skinner Services' construction sites at the beginning and end of the workday between August 5, 2013 and sometime in or around January 2016.[3]

72.     To date, Mr. Pineda has not been paid all wages and/or overtime premiums due for time worked on Defendant Skinner Services construction sites and traveling between construction sites during workdays in certain pay periods between August 5, 2013 and the present.

73.     To date, Skinner Services has not paid Mr. Pineda for the actual cost of gas used to drive his work crew to and from construction sites and/or other driving assignments directed by Defendant Skinner Services between August 5, 2013 and the present.[4]

74.     To date, Defendant Skinner Services has not paid Mr. Pineda any compensation for routine wear and tear and damage to his cars resulting from his assignment as a driver between August 5, 2013 and the present.

75.     To date, Mr. Pineda has not been paid all wages and/or overtime premiums due for hours worked on Defendant Skinner Services construction sites and transportation between construction sites during the workday from sometime in or around January 2016 and the present date.

---

[3] Between approximately January 2014 and January 2016, Mr. Pineda was occasionally, but not always, paid for up to an hour of travel time between Skinner Headquarters and his first and last construction site. Mr. Pineda was never paid for more than an hour of travel time each way.  At all other times relevant to this litigation, Mr. Pineda was not paid for any travel time for the travel from Skinner Headquarters to his first construction site and from his last construction site back to Skinner Headquarters.

[4] Skinner Services would occasionally pay Mr. Pineda $20 per day for gas, regardless of how much gas Mr. Pineda used during the workday.   On numerous occasions, Mr. Pineda used more than $20 of gas during his workday.

76.     For a year starting in or around December of 2014, Skinner Services deducted an amount approximately equal to one hour of wages per week from Mr. Pineda's paycheck for "uniform washing."

77.     For six months starting in or around December of 2015, Skinner Services deducted $7 per week from Mr. Pineda's paycheck for "uniform washing."

78.     Between 2014 and 2015, Defendant Skinner Services never washed Mr. Pineda's uniform.

79.     As a result of the above non-payment of wages, overtime, failure to reimburse travel expenses, and the uniform deductions, during some weeks between August 5, 2013, and the present, Defendant Skinner Services failed to pay Mr. Pineda an hourly wage rate equal to at least the federal minimum wage for each hour worked because Defendant Skinner Services failed to pay Mr. Pineda for at least some hours worked within these weeks.

80.     As a result of the above non-payment of wages, overtime, failure to reimburse travel expenses, and the uniform deductions, during some weeks between August 5, 2013, and the present, Defendant Skinner Services failed to pay Mr. Pineda an hourly wage rate at least the state minimum wage for each hour worked because Defendant Skinner Services failed to pay Mr. Pineda for at least some hours worked during those weeks.

## FACTUAL ALLEGATIONS – MARCO LOPEZ

81.     Sometime in or around 2010, Plaintiff Marco Lopez was hired to work at Defendant Skinner Services.

82.     Mr. Lopez's wage rate was initially set at $13/hour.

83.     In or around 2013, Mr. Lopez's wage rate was increased to $14/hour.

84.     Sometime in 2015, Mr. Lopez's wage rate was increased again to $15/hour.

85.    Starting before August 5, 2013 and continuing until at least sometime in or around January 2016, Skinner Services routinely required Mr. Lopez to report to Skinner Headquarters at the beginning of each workday before traveling to any of Defendant Skinner Services' construction sites.

86.    Between August 5, 2013 and sometime in or around January 2016, Mr. Lopez was routinely required to report to Skinner Headquarters by or before 5:45 A.M.

87.    Between August 5, 2013 and sometime in or around January 2016, Mr. Lopez received his daily crew and construction site assignments from Defendants Diniz, Thomas Skinner, or another Skinner manager after he arrived at Skinner Headquarters each morning.

88.    Between August 5, 2013 and sometime in or around January 2016, Mr. Lopez was required by Defendant Skinner Services to wait at Skinner Headquarters from the time he arrived until his work crew was assigned and instructed to leave for their construction site.

89.    Between August 5, 2013 and sometime in or around January 2016, Defendant Skinner Services assigned Mr. Lopez to drive his work crew to their assigned construction sites and back to Skinner Headquarters each day.  Generally, Mr. Lopez used his own car to drive his work crew to and from Skinner Headquarters and job sites.

90.    Between August 5, 2013 and sometime in or around January 2016, Mr. Lopez was assigned to drive other workers not assigned to his crew, supervisors, supplies or equipment to and from Defendant Skinner Services' construction sites, using his car, on an *ad hoc* basis.

91.    Since sometime in or around January 2016, Mr. Lopez has occasionally been required by Defendant Skinner Services to drive his work crew, other Skinner employees, supplies and other equipment using his car between Skinner Headquarters and/or construction sites.

12

92.     Between August 5, 2013 and sometime in or around January 2016, Mr. Lopez's travel between Skinner Headquarters and his first construction site assignment fluctuated from between approximately 45 minutes and 3 hours each day.

93.     Between August 5, 2013 and sometime in or around January 2016, Mr. Lopez's travel between his last construction site assignment and Skinner Headquarters fluctuated between approximately 45 minutes and 3 hours each day.

94.     Between August 5, 2013 and sometime in or around January 2016, Defendant Skinner Services was aware of when Mr. Lopez returned with his crew from his last construction site assignment for the day to Skinner Headquarters.

95.     After sometime in or around January 2016 and continuing to the present date, Mr. Lopez was routinely given construction site assignments in advance of the commencement of the workday and instructed to meet his crew at his assigned construction sites.

96.     At all times relevant to this litigation, Mr. Lopez was not allowed to "punch in" to begin his "on the clock" work time until he arrived at and reported to his first construction site for the day.

97.     At all times relevant to this litigation, Mr. Lopez was required to punch out when he left his final construction site for the day. This included times in which he was required by the Company to drive other employees to and from Skinner Headquarters and/or other locations after finishing work at his last construction site for the day.

98.     At all times relevant to this litigation, Mr. Lopez routinely worked at least forty (40) hours a week on Defendant Skinners Services' construction sites and/or traveling between construction sites during the workday, at the direction of Defendant Skinner Services.

99.     At all times relevant to this litigation, Mr. Lopez occasionally worked over forty (40) hours a week on Defendant Skinners Services' construction sites and/or traveling between construction sites during the workday.

100.    At all times relevant to this litigation, Mr. Lopez worked for Defendant Skinner Services 5-6 days a week, year round.

101.    Between August 5, 2013 and the present date, in certain weeks,  Defendant Skinner Services did not pay Mr. Lopez any wages and/or overtime premiums for a portion of hours worked on Skinners' construction sites and traveling between construction sites during the workday.

102.    To date, Mr. Lopez has not been paid any wages and/or overtime premiums due for the time each day between when he reported to Skinner Headquarters and the time he left for Skinner Services' construction sites, for the period August 5, 2013 to sometime in or around January 2016.

103.    To date, Mr. Lopez has not been paid all wages and/or overtime premiums due for time expended traveling between Skinner Headquarters and Defendant Skinner Services' construction sites at the beginning and end of the workday between August 5, 2013 and sometime in or around January 2016.[5]

104.    To date, Mr. Lopez has not been paid all wages and/or overtime premiums due for time worked on Defendant Skinner Services construction sites and traveling between construction sites during workdays in certain pay periods between August 5, 2013 and the present.

---

[5] Between approximately January 2014 and January 2016, Mr. Lopez was occasionally, but not always, paid for up to an hour of travel time between Skinner Headquarters and his first and last construction site. Mr. Lopez was never paid for more than an hour of travel time each way.  At all other times relevant to this litigation, Mr. Lopez was not paid for any travel time for the travel from Skinner Headquarters to his first site and from his last construction site back to Skinner Headquarters.

105.     After sometime in or around January 2016 and continuing to the present date, Mr. Lopez was routinely given construction site assignments in advance and instructed to meet his crews at his assigned construction sites.

106.     To date, Skinner Services has not paid Mr. Lopez for the actual cost of gas used to drive his work crew to and from construction sites and/or other driving assignments directed by Defendant Skinner Services between August 5, 2013 and the present.[6]

107.     To date, Defendant Skinner Services has not paid Mr. Lopez any money for routine wear and tear and damage to his cars resulting from his assignment as a driver between August 5, 2013 and the present.

108.     From in or around September of 2013 to in or around February of 2014, Skinner Services deducted an amount approximately equal to one hour of wages per week from Mr. Lopez's paycheck for "uniform washing."

109.     From in or around February of 2014 to in or around March of 2015, Skinner Services deducted $7 per week from Mr. Lopez's paycheck for "uniform washing."

110.     From 2013 to 2015, Defendant Skinner Services only washed Mr. Lopez's uniform two to three times.

111.     As a result of the above non-payment of wages, overtime, failure to reimburse travel expenses, and the uniform deductions, during some weeks between August 5, 2013, and the present, Defendant Skinner Services failed to pay Mr. Lopez an hourly wage rate equal to at least the federal minimum wage for each hour worked because Defendant Skinner Services failed to pay Mr. Lopez for at least some hours worked within these weeks.

---

[6] Skinner Services would occasionally pay Mr. Lopez $20 per day for gas, regardless of how much gas Mr. Lopez used during the workday.  Mr. Lopez often used more than $20 of gas in a given day workday.

112.     As a result of the above non-payment of wages, overtime, failure to reimburse travel expenses, and the uniform deductions, during some weeks between August 5, 2013, and the present, Defendant Skinner Services failed to pay Mr. Lopez an hourly wage rate at least the state minimum wage for each hour worked because Defendant Skinner Services failed to pay Mr. Lopez for at least some hours worked during those weeks.

## FACTUAL ALLEGATIONS – JOSE MONTENEGRO

113.     Sometime in or around November of 2011, Plaintiff Jose Montenegro was hired to work at Defendant Skinner Services.

114.     Mr. Montenegro's salary was initially set at $13/hour.

115.     In or around 2013, Mr. Montenegro's wage rate was increased to $14/hour.

116.     Sometime in 2014, Mr. Montenegro's wage rate was increased again to $15/hour.

117.     In or around 2016, Mr. Montenegro's wage rate was raised to $16/hour.

118.     Starting before August 5, 2013 and continuing until at least sometime in or around January 2016, Skinner Services routinely required Mr. Montenegro to report to Skinner Headquarters at the beginning of each work day before traveling to any of Defendant Skinner Services' construction sites.

119.     Between August 5, 2013 and sometime in or around January 2016, Mr. Montenegro was routinely required to report to Skinner Headquarters by or before 5:45 A.M.

120.     Between August 5, 2013 and sometime in or around January 2016, Mr. Montenegro received his daily crew and construction site assignments from Defendants Diniz, Thomas Skinner, or another Skinner manager after he arrived at Skinner Headquarters each morning.

121.    Between August 5, 2013 and sometime in or around January 2016, Mr. Montenegro was required by Defendant Skinner Services to wait at Skinner Headquarters from the time he arrived until his work crew was assigned and instructed to leave for their construction site.

122.    Between August 5, 2013 and sometime in or around January 2016, Mr. Montenegro did not drive from Skinner Headquarters to Defendant Skinner Services' construction sites, with rare exceptions.  Instead, Mr. Montenegro was driven by a Driver Plaintiff and/or other Skinner employees from Skinner Headquarters to his assigned construction sites and back to Skinner Headquarters each day.

123.    Between August 5, 2013 and sometime in or around January 2016, Mr. Montenegro's travel time between Skinner Headquarters and his first construction site assignment fluctuated from between approximately 45 minutes and 3 hours each day.

124.    Between August 5, 2013 and sometime in or around January 2016, Mr. Montenegro's travel time between his last construction site assignment and Skinner Headquarters fluctuated between approximately 45 minutes and 3 hours each day.

125.    Between August 5, 2013 and sometime in or around January 2016, Defendant Skinner Services was aware of when Mr. Montenegro returned with his crew from his last construction site assignment for the day to Skinner Headquarters.

126.    After sometime in or around January 2016 and continuing to the present date, Mr. Montenegro was routinely given construction site assignments in advance of the commencement of the workday and instructed to meet his crew at his assigned construction sites.

127.    At all times relevant to this litigation, Mr. Montenegro was not allowed to "punch in" to begin his "on the clock" work time until he arrived at and reported to his first construction site for the day.

128.    At all times relevant to this litigation, Mr. Montenegro was required to punch out when he left his final construction site for the day. This included times in which he was travelling to and from Skinner Headquarters and/or other locations after finishing work at his last construction site for the day.

129.    At all times relevant to this litigation, Mr. Montenegro routinely worked at least forty (40) hours a week, on Defendant Skinners Services' construction sites and/or traveling between construction sites during the workday, at the direction of Defendant Skinner Services.

130.    At all times relevant to this litigation, Mr. Montenegro occasionally worked over forty (40) hours a week on Defendant Skinners Services' construction sites and/or traveling between construction sites during the workday.

131.    At all times relevant to this litigation, Mr. Montenegro worked for Defendant Skinner Services 5-6 days a week, year round.

132.    Between August 5, 2013 and the present date, in certain weeks, Defendant Skinner Services did not pay Mr. Montenegro any wages and/or overtime premiums for a portion of hours worked on Skinners' construction sites and traveling between construction sites during the work day.

133.    To date, Mr. Montenegro has not been paid any wages and/or overtime premiums due for the time each day between when he reported to Skinner Headquarters and the time he left for Skinner Services construction sites, for the period August 5, 2013 to sometime in or around January 2016.

134.    To date, Mr. Montenegro has not been paid any wages and/or overtime premiums due for time expended traveling between Skinner Headquarters and Defendant Skinner Services' construction sites at the beginning and end of the workday between August 5, 2013 and sometime in or around January 2016.

135.    To date, Mr. Montenegro has not been paid all wages and/or overtime premiums due for time worked on Defendant Skinner Services construction sites and traveling between construction sites during workdays in certain pay periods between August 5, 2013 and the present.

136.    For approximately a year and a half starting in or around December of 2014, Skinner Services deducted an amount approximately equal to one hour of wages per week per week from Mr. Montenegro's paycheck for "uniform washing."

137.    In or around June of 2015, Mr. Montenegro returned his uniform shirts to Skinner Services.

138.    From in or around June of 2015 to the present, Skinner Services has deducted $7 per week for "uniform washing" from Mr. Montenegro's paycheck.

139.    Since December of 2014, Skinner Services has only rarely washed Mr. Montenegro's uniform.

140.    As a result of the above non-payment of wages and overtime as well as uniform deductions, during some weeks between August 5, 2013, and the present, Defendant Skinner Services failed to pay Mr. Montenegro an hourly wage rate equal to at least the federal minimum wage for each hour worked because Defendant Skinner Services failed to pay Mr. Montenegro for at least some hours worked within these weeks.

141.    As a result of the above non-payment of wages and overtime as well as uniform deductions, during some weeks between August 5, 2013, and the present, Defendant Skinner Services failed to pay Mr. Montenegro an hourly wage rate at least the state minimum wage for each hour worked because Defendant Skinner Services failed to pay Mr. Montenegro for at least some hours worked during those weeks.

## FACTUAL ALLEGATIONS – JOSE HERNANDEZ

142.    Sometime in or around December of 2013, Plaintiff Jose Hernandez was hired to work at Defendant Skinner Services.

143.    Mr. Hernandez's salary was initially set at $13/hour.

144.    In or around August of 2015, Mr. Hernandez's wage rate was increased to $14/hour.

145.    Starting sometime in or around December of 2013 and continuing until at least sometime in or around January 2016, Skinner Services routinely required Mr. Hernandez to report to Skinner Headquarters at the beginning of each work day before traveling to any of Defendant Skinner Services' construction sites.

146.    Between sometime in or around December of 2013 and sometime in or around January 2016, Mr. Hernandez was routinely required to report to Skinner Headquarters by or before 5:45 A.M.

147.    Between sometime in or around December of 2013 and sometime in or around January 2016, Mr. Hernandez received his daily crew and construction site assignments from Defendants Diniz, Thomas Skinner, or another Skinner manager after he arrived at Skinner Headquarters each morning.

148.     Between sometime in or around December of 2013 and sometime in or around January 2016, Mr. Hernandez was required by Defendant Skinner Services to wait at Skinner Headquarters from the time he arrived until his work crew was assigned and instructed to leave for their construction site.

149.     Between sometime in or around December of 2013 and sometime in or around January 2016, with rare exceptions, Mr. Hernandez did not drive from Skinner Headquarters to Skinner Services' construction sites.  Instead, Mr. Hernandez was driven by Driver Plaintiffs and other Skinner employees from Skinner Headquarters to his assigned construction sites and back to Skinner Headquarters each day.

150.     Between sometime in or around December of 2013 and sometime in or around January 2016, Mr. Hernandez's travel between Skinner Headquarters and his first construction site assignment fluctuated from between approximately 45 minutes and 3 hours each day.

151.     Between sometime in or around December of 2013 and sometime in or around January 2016, Mr. Hernandez's travel between his last construction site assignment and Skinner Headquarters fluctuated between approximately 45 minutes and 3 hours each day.

152.     Between August 5, 2013 and sometime in or around January 2016, Defendant Skinner Services was aware of when Mr. Hernandez returned with his crew from his last construction site assignment for the day to Skinner Headquarters.

153.     After sometime in or around January 2016 and continuing to the present date, Mr. Hernandez was routinely given construction site assignments in advance of the commencement of the workday and instructed to meet his crew at his assigned construction sites.

154.     At all times relevant to this litigation, Mr. Hernandez was not allowed to "punch in" to begin his "on the clock" work time until he arrived at and reported to his first construction site for the day.

155.     At all times relevant to this litigation, Mr. Hernandez was required to punch out when he left his final construction site for the day. This included times in which he was travelling to and from Skinner Headquarters and/or other locations after finishing work at his last construction site for the day.

156.     At all times relevant to this litigation, Mr. Hernandez routinely worked at least forty (40) hours a week, on Defendant Skinners Services' construction sites and/or traveling between construction sites during the workday, at the direction of Defendant Skinner Services.

157.     At all times relevant to this litigation, Mr. Hernandez occasionally worked over forty (40) hours a week Defendant Skinners Services' construction sites and/or traveling between construction sites during the workday.

158.     At all times relevant to this litigation, Mr. Hernandez worked for Defendant Skinner Services 5-6 days a week, year round.

159.     Between sometime in or around December of 2013 and the present date, in certain weeks Defendant Skinner Services did not pay Mr. Hernandez any wages and/or overtime premiums for a portion of hours worked on Skinners' construction sites and traveling between construction sites during the work day.

160.     To date, Mr. Hernandez has not been paid any wages and/or overtime premiums due for the time each day between when he reported to Skinner Headquarters and the time he left for Skinner Services' construction sites, for the period between sometime in or around December of 2013 to sometime in or around January 2016.

161.    To date, Mr. Hernandez has not been paid any wages and/or overtime premiums due for time expended traveling between Skinner Headquarters and Defendant Skinner Services' construction sites at the beginning and end of the workday between sometime in or around December of 2013 and sometime in or around January 2016.

162.    To date, Mr. Hernandez has not been paid all wages and/or overtime premiums due for time worked on Defendant Skinner Services' construction sites and traveling between construction sites during workdays between sometime in or around December of 2013 and the present.

163.    To date, Mr. Hernandez has not been paid all wages and/or overtime premiums due for hours worked on Defendant Skinner Services' construction sites and transportation between construction sites during the workday from sometime in or around January 2016 and the present date.

164.    For approximately three months, starting in or around February of 2014, Skinner Services deducted an amount approximately equal to one hour of wages per week from Mr. Hernandez's paycheck for "uniform washing."

165.    For approximately one year, starting in or around December of 2014, Skinner Services deducted an amount approximately equal to one hour of wages per week from Mr. Hernandez's paycheck for "uniform washing."

166.    When Mr. Hernandez's uniform pants were lost through no fault of his own on multiple occasions during this period, Skinner Services charged him $25 each time to replace them.

167.    Between 2014 and 2015, Defendant Skinner Services rarely washed Mr. Hernandez's uniform.

168.    As a result of the above non-payment of wages and overtime as well as uniform deductions, during some weeks between August 5, 2013, and the present, Defendant Skinner Services failed to pay Mr. Hernandez an hourly wage rate equal to at least the federal minimum wage for each hour worked because Defendant Skinner Services failed to pay Mr. Hernandez for at least some hours worked within these weeks.

169.    As a result of the above non-payment of wages and overtime as well as uniform deductions, during some weeks between August 5, 2013, and the present, Defendant Skinner Services failed to pay Mr. Hernandez an hourly wage rate at least the state minimum wage for each hour worked because Defendant Skinner Services failed to pay Mr. Hernandez for at least some hours worked during those weeks.

### FACTUAL ALLEGATIONS – SIMILARLY SITUATED WORKERS

170.    On information and belief, at all times relevant to this litigation, the Plaintiffs and all similarly situated workers ("Class Plaintiffs") were employed by Defendant Skinner Services as manual laborers to perform demolition work at Skinner's construction sites.

171.    The Class Plaintiffs were paid between $13 and $16 per hour by Defendant Skinner Services.

172.    Starting before August 5, 2013 and continuing until at least sometime in or around January 2016, Defendant Skinner Services required Class Plaintiffs to report to Skinner Headquarters at the beginning of each work day before traveling to any of Defendant Skinner Services' construction sites.

173.    Between August 5, 2013 and sometime in or around January 2016, Class Plaintiffs were routinely required to report to Skinner Headquarters by or before 5:45 A.M.

174.     Between August 5, 2013 and sometime in or around January 2016, Class Plaintiffs received their daily crew and construction site assignments from Defendants Diniz, Thomas Skinner, or another Skinner manager after they arrived at Skinner Headquarters each morning.

175.     Between August 5, 2013 and sometime in or around January 2016, Class Plaintiffs were required by Defendant Skinner Services to wait at Skinner Headquarters from the time they arrived until their work crew was assigned and instructed to leave for their construction site assignments.

176.     Between August 5, 2013 until sometime in or around January 2016, Defendant Skinner Services assigned Driver Plaintiffs[7] to drive their work crews to their assigned construction sites and back to Skinner Headquarters each day.  Some Driver Plaintiffs used their own cars, while others drove Defendant Skinner Services' vehicles.

177.     Between August 5, 2013 and sometime in or around January 2016, Driver Plaintiffs were assigned to drive other workers not assigned to their crew, supervisors, supplies or equipment to and from Defendant Skinner Services' construction sites, using their own cars, on an *ad hoc* basis.

178.     Since sometime in or around January 2016, Driver Plaintiffs have occasionally been required by Defendant Skinner Services to drive their work crews, other Skinner employees, supplies and other equipment using their cars between Skinner Headquarters and/or construction sites.

---

[7] Driver Plaintiffs are a subgroup of Class Plaintiffs made up of all named Plaintiffs and those similarly situated who were required to drive their work crews between Skinner Headquarters and Skinner's construction sites.

179.     Non-Driver Plaintiffs[8] were part of the work crews transported by Driver Plaintiffs and other Skinner employees to their assigned construction site, between construction sites, and back to Skinner Headquarters on workdays between August 5, 2013, and sometime in or around January 2016.

180.     Between August 5, 2013 and sometime in or around January 2016, Class Plaintiffs' travel time between Skinner Headquarters and their first construction site assignment fluctuated from between approximately 45 minutes and 3 hours each day.

181.     Between August 5, 2013 and sometime in or around January 2016, Class Plaintiffs' travel time between their last construction site assignment and Skinner Headquarters fluctuated between approximately 45 minutes and 3 hours each day.

182.     Between August 5, 2013 and sometime in or around January 2016, Defendant Skinner Services was aware of when Class Plaintiffs returned from their last construction site assignment for the day to Skinner Headquarters.

183.     After sometime in or around January 2016 and continuing to the present date, Class Plaintiffs were routinely given construction site assignments in advance of the commencement of the workday and instructed to meet their crews at their assigned construction sites.

184.     At all times relevant to this litigation, Class Plaintiffs were not allowed to "punch in" to begin their "on the clock" work time until they arrived at and reported to their first construction site for the day.

185.     At all times relevant to this litigation, all Class Plaintiffs were required to punch out when they left their final construction site for the day.

[8] Non-Driver Plaintiffs are a subgroup of Class Plaintiffs made up of all named Plaintiffs and those similarly situated who were driven to and from Skinner Headquarters to Skinner construction sites by Driver Plaintiffs.

186.    At all times relevant to this litigation, Class Plaintiffs routinely worked at least forty (40) hours a week, on Defendant Skinners Services' construction sites and/or traveling between construction sites during the workday.

187.    At all times relevant to this litigation, Class Plaintiffs occasionally worked over forty (40) hours a week Defendant Skinners Services' construction sites and/or traveling between construction sites during the workday.

188.    At all times relevant to this litigation, Class Plaintiffs worked for Defendant Skinner Services 5-6 days a week, year round.

189.    Between August 5, 2013 and the present date, in certain weeks, Defendant Skinner Services did not pay Class Plaintiffs any wages and/or overtime premiums for a portion of hours worked on Skinners' construction sites and traveling between construction sites during the workday.

190.    To date, Class Plaintiffs have not been paid any wages and/or overtime premiums due for the time each day between when they reported to Skinner Headquarters and the time they left for Skinner Services construction sites, for the period August 5, 2013 to sometime in or around January 2016.

191.    To date, Driver Plaintiffs have not been paid all wages and/or overtime premiums due for time expended traveling between Skinner Headquarters and Defendant Skinner Services' construction sites at the beginning and end of the workday between August 5, 2013 and sometime in or around January 2016.[9]

---

[9] Between approximately January 2014 and January 2016, Driver Plaintiffs were occasionally, but not always, paid for up to an hour of travel time between Skinner Headquarters and their first and last construction site. Driver Plaintiffs were never paid for more than an hour of travel time each way.  At all other times relevant to this litigation, Driver Plaintiffs were not paid for any travel time for the travel from Skinner Headquarters to their first construction site and from their last construction site back to Skinner Headquarters.

192.    To date, Non-Driver Plaintiffs have not been paid any wages and/or overtime premiums due for time expended traveling between Skinner Headquarters and Defendant Skinner Services' construction sites at the beginning and end of the workday between August 5, 2013 and sometime in or around January 2016.

193.    To date, Class Plaintiffs have not been paid all wages and/or overtime premiums due for time worked on Defendant Skinner Services' construction sites and traveling between construction sites during workdays in certain pay periods between August 5, 2013 and the present.

194.    To date, Skinner Services has not paid Driver Plaintiffs for the actual cost of gas used to drive their work crews to and from construction sites and/or other driving assignments directed by Defendant Skinner Services between August 5, 2013 and the present.[10]

195.    To date, Defendant Skinner Services has not paid Driver Plaintiffs any money for routine wear and tear and damage to their cars resulting from their assignments as drivers between August 5, 2013 and the present.

196.    At times relevant to this litigation, Skinner Services deducted varying amounts from Class Plaintiffs' paychecks for "uniform washing."

197.    At times relevant to this litigation, Skinner Services rarely washed Class Plaintiffs' uniforms or performed any other services in exchange for the "uniform washing" fee.

198.    At times relevant to this litigation, Skinner Services charged Class Plaintiffs a fee for replacement of all or part of their uniforms, where the pieces of the uniform were lost through no fault of their own.

---

[10] Skinner Services would occasionally pay Driver Plaintiffs $20 per day for gas, regardless of how much gas Driver Plaintiffs used during the workday.  Driver Plaintiffs often used more than $20 of gas in a given workday.

199.    As a result of the above non-payment of wages, overtime, failure to reimburse travel expenses and the uniform deductions, during some weeks between August 5, 2013 and the present, Defendant Skinner Services failed to pay Driver Plaintiffs an hourly wage rate equal to at least the federal minimum wage for each hour worked because Defendant Skinner Services failed to pay Driver Plaintiffs for at least some hours worked within these weeks.

200.    As a result of the above non-payment of wages and overtime as well as the uniform deductions, during some weeks between August 5, 2013 and the present, Defendant Skinner Services failed to pay Non-Driver Plaintiffs an hourly wage rate equal to at least the federal minimum wage for each hour worked because Defendant Skinner Services failed to pay Non-Driver Plaintiffs for at least some hours worked within these weeks.

201.    As a result of the above non-payment of wages, overtime, failure to reimburse travel expenses, and the uniform deductions, during some weeks between August 5, 2013 and the present, Defendant Skinner Services failed to pay Driver Plaintiffs an hourly wage rate equal to at least the state minimum wage for each hour worked because Defendant Skinner Services failed to pay Driver Plaintiffs for at least some hours worked within these weeks.

202.    As a result of the above non-payment of wages and overtime as well as the uniform deductions, during some weeks between August 5, 2013 and the present, Defendant Skinner Services failed to pay Non-Driver Plaintiffs an hourly wage rate equal to at least the state minimum wage for each hour worked because Defendant Skinner Services failed to pay Non-Driver Plaintiffs for at least some hours worked within these weeks.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

203.    The Plaintiffs have satisfied all statutory prerequisites and conditions precedent necessary to seek remedy against Defendants on their state law claims by submitting a complaint

29

to the Massachusetts Office of the Attorney General and receiving a letter from the Attorney General granting the Plaintiffs the opportunity to file a private cause of action within 90 days of filing their wage complaints.

<b><u>COUNT I – VIOLATION OF THE FLSA – OVERTIME</u></b>

204. Class Plaintiffs[11] hereby restate, reallege, and incorporate by reference the allegations of paragraphs 1 through 203 above.

205. Defendant Skinner Services is an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s)(1).

206. Defendants, and each of them, suffered or permitted the Class Plaintiffs to work for them within the meaning of 29 U.S.C. § 203(g).

207. Defendants, and each of them, are Class Plaintiffs' employers, i.e., a single employer or joint employers, under the Fair Labor Standards Act, as defined by 29 U.S.C. § 203(d).

208. At all times relevant to this litigation, Thomas Skinner, David Skinner, Elber Diniz, and Sandro Santos (collectively "Individual Defendants") were owners, corporate officers, and/or managers at Skinner Services with operational control of, a financial interest in, and/or involvement in decisions affecting Class Plaintiffs' employment terms and conditions.

209. Under the Fair Labor Standards Act, 29 U.S.C. § 207(a), Defendants, and each of them, were required to pay the Class Plaintiffs at a rate not less than one and one-half times the Class Plaintiffs' "regular rates" of wages for all hours the Plaintiffs worked in excess of 40 in a workweek.

---

[11] "Plaintiffs" as used in this Complaint's legal counts refers to Mr. Pineda, Mr. Lopez, Mr. Montenegro, and Mr. Hernandez and all similarly situated workers.

210.    Between August 5, 2013 and sometime in or around January 2016, Class Plaintiffs consistently worked over 40 hours per week.

211.    Between sometime in or around January 2016 and the present, Class Plaintiffs at times worked over 40 hours a week.

212.    To date, Defendants, and each of them, have not paid Class Plaintiffs one and one-half times their regular rate for all hours worked by Class Plaintiffs in excess of 40 total hours per week for weeks during the period between August 5, 2013 and the present, in violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a).

213.    At times relevant to this litigation, Defendants, and each of them, acted willfully or with reckless disregard as to their obligation to pay one and one-half times the Class Plaintiffs' regular rate of pay for hours worked beyond 40 hours in a workweek, and, accordingly, the violation was willful for purposes of the Fair Labor Standards Act, 29 U.S.C. §§ 255(a) and 260.

214.    As a result of Defendants' unlawful conduct, the Class Plaintiffs have incurred a loss of overtime compensation in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

## COUNT II – VIOLATION OF THE MASSACHUSETTS FAIR WAGE ACT – OVERTIME

215.    Class Plaintiffs hereby restate, reallege, and incorporate by reference the allegations of paragraphs 1 through 214 above.

216.    At all times relevant to this litigation, Defendants, and each of them, were "employers" of the Class Plaintiffs within the meaning of M.G.L. c. 151 § 1B.

217.    At all times relevant to this litigation, Individual Defendants were officers or agents of Defendant Skinner Services within the meaning of M.G.L. 151 § 1B.

31

218.    At all times relevant to this litigation, the Class Plaintiffs were "employees" of the Defendants, and each of them, within the meaning of M.G.L. c. 151 § 1A.

219.    At all times relevant to this litigation, Defendants, and each of them, employed the Class Plaintiffs within the meaning of M.G.L. c. 151 § 1A.

220.    Through the conduct recited in the Factual Allegations and Count I, at times relevant to this litigation, Defendants, and each of them, violated their obligation to pay Class Plaintiffs one and a half times their regular rates of pay for hours worked beyond 40 hours in a workweek for weeks during the period of August 5, 2013 and the present, as required under M.G.L. c. 151 § 1A.

221.    As a result of Defendants' unlawful conduct, Class Plaintiffs have incurred a loss of overtime compensation in an amount to be determined at trial, along with treble damages, attorneys' fees and costs of litigation.

### COUNT III – VIOLATION OF THE FLSA – MINIMUM WAGE

222.    Class Plaintiffs hereby restate, reallege, and incorporate by reference the allegations of paragraphs 1 through 221 above.

223.    To date, Skinner Services has not paid the Class Plaintiffs for all hours worked during workweeks within the period between August 5, 2013 and the present.

224.    During workweeks within the period between August 5, 2013 and the present, Defendants, and each of them, paid Class Plaintiffs less than the minimum hourly wage of $7.25 per hour required under 29 U.S.C. § 206(a)(1) because Defendants, and each of them, failed to pay Class Plaintiffs any wages for a significant number of hours worked in certain workweeks.

225.    Defendants, and each of them, acted willfully or with reckless disregard as to their obligation to pay workers a minimum hourly wage, and, accordingly, the violation was willful

for purposes of the Fair Labor Standards Act, 29 U.S.C. §§ 255(a) and 260.

226.    As a result of Defendants' unlawful conduct,  Class Plaintiffs have incurred loss of wages in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

## COUNT IV – VIOLATION OF THE MASSACHUSETTS FAIR WAGE ACT – MINIMUM WAGE

227.    Class Plaintiffs hereby restate, reallege, and incorporate by reference the allegations of paragraphs 1 through 226 above.

228.    During workweeks within the period between August 5, 2013 and the present, Defendants, and each of them, paid Class Plaintiffs less than the applicable minimum hourly wage under M.G.L. c. 151, § 1, alleged in ¶¶45-47 because Defendants, and each of them, failed to pay Plaintiffs any wages for a significant number of hours worked, failed to reimburse Driver Plaintiffs for the actual cost of gas and other transportation expenses such as mileage, damage, and wear and tear on Driver Plaintiffs' personal cars while in service to the Defendants,  and deducted wages from Class Plaintiffs for "uniform washing" that was rarely performed and uniform replacement resulting from damage not caused by the Class Plaintiffs.

229.    Defendants' failure to pay Class Plaintiffs the minimum hourly wage for each hour worked violates M.G.L. c. 151, §§ 1 and 20.

230.    As a result of Defendants' unlawful conduct, Class Plaintiffs have incurred a loss of wages in an amount to be determined at trial, along with treble damages, attorneys' fees and costs of litigation.

## COUNT V – VIOLATION OF MASSACHUSETTS NON-PAYMENT OF WAGES ACT – FAILURE TO PAY WAGES OWED

231.    Class Plaintiffs hereby restate, reallege, and incorporate by reference the allegations of paragraphs 1 through 230 above.

232.    At all times relevant to this litigation, Defendants, and each of them, were persons having employees in their service within the meaning of M.G.L. c. 149, § 148.

233.    At all times relevant to this litigation, Defendant Thomas Skinner was the president and treasurer of Skinner Services within the meaning of M.G.L. c. 149, § 148.

234.    At all times relevant to this litigation, Individual Defendants, and each of them, were officers or agents having the management of Skinner Services within the meaning of M.G.L. c. 149, § 148.

235.    At all times relevant to this litigation, Class Plaintiffs were employees in the service of Defendant Skinner Services within the meaning of M.G.L. c. 149, § 148.

236.    During workweeks between August 5, 2013 and the present, Defendants, and each of them, failed to pay Class Plaintiffs their agreed upon hourly rate for each hour worked by failing to pay them any wages for some hours worked in certain workweeks.

237.    During workweeks between August 5, 2013 and the present, Defendants, and each of them, failed to pay Class Plaintiffs all wages owed by failing to pay them overtime wages owed pursuant to 28 U.S.C. § 207(a).

238.    During workweeks within the period between August 5, 2013 and the present, Defendants, and each of them, failed to pay Plaintiffs all wages owed by failing to fully reimburse the Driver Plaintiffs for gas and other transportation expenses, such as mileage, damage, and wear and tear on Driver Plaintiffs' personal cars expended on driving assignments for Defendants and by deducting wages from Class Plaintiffs  for "uniform washing" that was

34

rarely performed and uniform replacement resulting from loss or damage not caused by the Class Plaintiffs.

239.    To date, Defendants have failed to make payment to Class Plaintiffs for all earned but unpaid compensation as set forth in ¶¶ 236-238, *supra*.

240.    By failing to pay the Class Plaintiffs all of their earned wages at established wage rates during workweeks between August 5, 2013, and the present, Defendants, and each of them, violated M.G.L. c. 149, § 148.

241.    As a result of Defendants' unlawful conduct, the Plaintiffs have incurred loss of compensation in an amount to be determined at trial, along with treble damages, attorneys' fees and costs of litigation.

## JURY DEMAND

Plaintiffs request a trial by jury on their claims.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that this Court grant relief in their favor, and against Defendants on a joint and several basis, as follows:

    a.    Award all Plaintiffs actual damages, multiple damages, liquidated damages and pre-judgment interest as a result of the wrongful conduct complained of herein;

    b.    Award all Plaintiffs their costs and expenses in this litigation, including reasonable attorneys' fees and expert fees;

    c.    Enter declaratory and injunctive relief prohibiting Defendants and each of them from failing to pay overtime, minimum wages, agreed to wage rates and all other wages due and owing;

    d.    Provide such other and further relief as the Court deems just and proper.

Respectfully submitted,

JOSE PINEDA,
JOSE MONTENEGRO,
MARCO LOPEZ, and
JOSE HERNANDEZ
on behalf of themselves and all others similarly
situated,

By their attorneys,


/s/ Nicole Horberg Decter
Nicole Horberg Decter, Esq. BBO #658268
Alexander Sugerman-Brozan, Esq. BBO #650980
Jasper Groner, Esq. BBO #682403
SEGAL  ROITMAN, LLP
111 Devonshire Street, 5th Floor
Boston, MA 02109
Telephone:  617-742-0208
Facsimile:  617-742-2187
ndecter@segalroitman.com

Dated:  November 2, 2016