UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE PINEDA, JOSE MONTENEGRO, MARCO LOPEZ, and JOSE HERNANDEZ on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SKINNER SERVICES, INC. d/b/a SKINNER DEMOLITION, THOMAS SKINNER, DAVID SKINNER, ELBER DINIZ, and SANDRO SANTOS<br><br>Defendants. | C.A. No. 1:16-cv-12217 |

**PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS AS TO MOTION IN LIMINE REGARDING LATE-PRODUCED TEXT MESSAGES**

Plaintiffs respectfully submit this petition for attorneys' fees and costs relating to Defendants' failure to preserve, search for, and produce relevant text messages that Plaintiffs had repeatedly requested, and Plaintiffs' motion to exclude those text messages and for sanctions ("Text MIL"), in accordance with the Court's order issued from the bench on June 10, 2021. See Dkt. No. 455. As outlined in detail in the Text MIL, Defendants engaged in a multi-year pattern of non-production and delay that culminated in the sudden and inexplicable "discovery" of text messages ("Late Texts") on named Defendant Thomas Skinner's phone in December of 2020, more than two years after the close of discovery. See Dkt. Nos. 427-428 and 447. The Court orally ruled that these Late Texts should be excluded, finding that production of text messages was a simple matter, that there was no reason these texts should not have been produced during the course of ordinary discovery, and that Defendants' explanation as to their late "discovery" of

these text messages provided no excuse for their actions. The Court further ordered Plaintiffs to submit the instant motion for attorneys' fees and costs.

In light of these rulings, and for the reasons set forth in the Text MIL, Plaintiffs are entitled to the standard remedy of attorney's fees and costs expended in relation to the text message issue since December of 2020. Applying the lodestar method to Plaintiffs' 90.5 claimed hours expended on this matter, Plaintiffs respectfully request $27,195.00 in attorneys' fees and costs. As shown below, the amount requested is narrowly tailored and reasonable. The efforts involved in trying to resolve this unnecessary dispute were far reaching and involved many minute and convoluted details. Further, as shown below, Plaintiffs are primarily seeking relief only for the Text MIL itself and a small amount of work incurred since the close of discovery in this matter. Plaintiffs are not here seeking relief for the substantial effort during discovery to obtain relevant texts.[1]

## I. Attorneys' Fees and Costs are a Standard Remedy for Violations of the Discovery Rules.

Attorneys' fees and costs are a standard remedy for violations of the discovery rules, as occurred here. Plaintiffs' successful Text MIL contended Defendants violated Fed. R. Civ. P. 26(g), 37(c)(1), and 37(e)(1). Dkt. No. 427 and 428. Each of these Rules provide for the make-whole remedy of attorney's fees and costs expended as a result of discovery violations. Fed. R. Civ. P. 37(c)(1) (court "may order payment of reasonable expenses, including attorney's fees, caused by failure to disclose or supplement information"); 37(e)(1) (providing for remedy necessary to cure prejudice of failure to preserve electronically stored information regardless of whether loss of electronically stored information was intentional); 26(g)(3) (payment of

[1] Plaintiffs intend to seek said additional fees/costs at trial.

expenses, including attorney's fees, where attorney signs disclosure that was not complete at the time it was made and where a discovery response was not consistent with the Fed. R. Civ. P., where these actions were not "substantially justified"). The fees and costs expended in drafting a motion related to violation of these sections are a standard remedy for violating these sections, particularly where the error is without substantial justification. E.g., HipSaver Co., Inc. v. J.T. Posey Co., 497 F.Supp.2d 96, 103-104 (D. Mass. 2007) (awarding attorney's fees and costs where late production of data was not "substantially justified"); Biltrite Corp. v. World Road Markings, Inc., 202 F.R.D. 359, 362 (D. Mass. 2001) (awarding attorneys' fees and costs for false or misleading initial disclosures that were "without substantial justification"). This remedy can include time expended seeking discovery responses that a party ultimately seeks to exclude for untimely production. See Great Lakes Transp. Holding LLC v. Yellow Cab Service Corp. of Florida, Inc., 2011 WL 1705569, *4 (S.D. Fl. May 4. 2011) (granting attorney's fees expended seeking production of document as sanction).

The details of the long history of this issue are set forth more fully in the Text MIL. In brief, Plaintiffs have spent many hours and days getting the runaround from Defendants on the preservation, search for, and production of text messages, despite their plain and stated relevance to a key defense raised by the Defendants. This pattern began early on in discovery and culminated with Plaintiffs' Text MIL.

The Court found that Defendants' failure to produce the Late Texts, at the very least in response to Plaintiffs' normal discovery requests if not as a part of Defendants' Initial Disclosures, to lack substantial justification. The Court correctly observed that the Late Texts were plainly relevant to Defendants' case and could easily have been screenshotted by any phone user. The Court also found Defendants' facile explanation for their late production unconvincing.

And these actions came in the context of multi-year delays and distractions as to the production of text messages that Defendants admitted *ab initio* were relevant to their defenses.

While Plaintiffs believe they may arguably be entitled to fees and costs related to seeking the production of texts incurred during and directly after discovery, they merely seek fees and costs expended after the Defendants disclosed the Late Texts in December 2020. These fees and costs which were expended in initial analysis of the import of the Late Texts and (predominately) in drafting the Text MIL. As such, Plaintiffs should clearly be awarded attorneys' fees and costs for Defendants' completely unjustifiable discovery violations.

## II. The Amount of Plaintiffs' Request for Attorneys' Fees and Costs Is Reasonable and Consistent with Precedent in the Area.

Plaintiffs' request for $27,195.00 in attorneys' fees and costs expended in pursuing the production of the text messages and drafting of the Motion to Exclude and for Sanctions is clearly reasonable. The requested fees and costs are as follows:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Nicole Horberg Decter | $450/hr | 0.1 | $45.00 |
| Nathan Goldstein | $400/hr | 29.7 | $11,880.00 |
| Jasper Groner | $225-$250/hr[2] | 60.5 | $12,400.00 |
| Paige Walker McKissock | $300/hr[3] | 0.2 | $60.00 |
| **TOTAL** | | 90.5 | $26,985.00 |

In addition, Plaintiffs have expended $210.00 in legal research costs in pursuing the Text MIL. How Plaintiffs arrived at these figures, as well as the supporting documentation, is explained, infra.

[2] As will be explained infra, $225 per hour for his time in 2019-2020, and $250 for his time expended in 2021.
[3] Plaintiffs request $300 per hour for Attorney McKissock's time in 2021, after she became a partner at Segal Roitman LLP, as detailed infra.

The amount of attorneys' fees awarded is typically determined by the "lodestar" analysis, which is the product of "hours reasonably expended by the attorneys for the prevailing party" and the "reasonable hourly rate or rates" of the attorneys. Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015); AstroMed, Inc. v. Plant, 250 F.R.D. 28, 30-31 (D.R.I. 2008). The Plaintiffs here seek compensation for 90.5 hours of work by attorneys. These hours reflect the time expended analyzing the impact of text messages produced well after the close of discovery, researching the law on this unusual situation, and drafting the Motion necessary to explain the lengthy context of Defendants' inappropriate discovery and post-discovery actions. Drafting that Motion required Plaintiff Counsel to review and summarize the five years of delay, deflection, and shifting explanations Defendants gave for not preserving, looking for, or producing basic discovery. Plaintiffs believe that the time spent on this issue – which concerns a major defense raised by Defendants in regard to the upcoming trial – was eminently reasonable under the circumstances.

Plaintiffs' petition for attorneys' fees and costs is limited to work directly related to the Late Texts issue. Plaintiffs excised from the requested fees all time expended during and directly after discovery related to the pursuit of Defendants' production of text messages. Plaintiffs also excised time spent analyzing the impact of Defendants' earlier post-discovery production of text messages in mid-2019. See Dkt. No. 428 at 9-11.As stated supra, Plaintiffs believe they may be entitled to fees and costs for these actions but have decided not to pursue them. The time spent on these issues post-discovery alone amounts to approximately 60 hours.

For those time entries related to the Late Texts after December 2020, Plaintiffs have also excised time primarily related to other aspects of the case, which reduced the amount of requested time in the relevant time entries from 117.7 to 95.6 hours. Plaintiffs further reduced the amount of time spent as to the text messages from 95.6 hours to 90.5 hours by reducing Attorney

Groner's entries on March 16, 18, and 21, 2021, and Attorney Goldstein's entries on March 24, 2021, and March 25, 2021. The contemporaneous billing records and the reduction thereto are contained in Exhibit A, attached hereto.[4] A fuller explanation of how these records were reduced is set forth in Exhibit B, declaration of Attorney Groner, attached hereto.

The guiding light for an attorney's reasonable hourly rate under the lodestar analysis is the prevailing market rates. See Matalon v. Hynes, 806 F.3d at 638 (defining reasonable hourly rates as "a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence"). Courts analyzing the Boston market have consistently found that experienced employment attorneys command rates well in excess of $400 in the prevailing market, that more moderately experienced employment attorneys command rates in the range of $300 per hour, and that recently graduated associates command rates in the range of $200 per hour. See Smith v. City of Boston, 496 F.Supp.3d 590, 598 (D.Mass. 2020) (awarding $700 and $600 per hour to senior counsel to plaintiff in employment litigation matter, $400 per hour for counsel with 15 year's experience, and $300 per hour for counsel with five years' experience)[5]; Schand v. McMahon, 487 F.Supp.3d 71, 83 (D.Mass. 2020) (reasonable hourly rate for partners or attorneys with ten years' experience on civil rights cases set at $450 in the lower-cost Springfield market); Gross v. Sun Life Assurance Co. of Canada, 880 F.3d 1, 23-24 (1st Cir. 2018) (noting district court approval of rates of $500 per hour for Boston-based employment attorney); Trainor v. HEI Hospitality LLC, 2012 WL 119597, *14 (D.Mass. 2012) aff'd in part, vacated in part, 699 F.3d 19 (1st Cir. 2012) (not

[4] Plaintiffs are submitting the records in Exhibit A only for the purposes of seeking relief pursuant to the Court's order excluding the Late Texts and reserve all claims of privilege and confidentiality to the greatest extent possible under the law, particularly given that the underlying lawsuit is ongoing. These records have been redacted as explained in Ex. B, ¶ 15.

[5] Plaintiffs cross-referenced these awards with the attorneys' stated years of admission on their firms' websites. See https://www.llrlaw.com/ and https://www.fairworklaw.com/ (last visited February 7, 2021).

vacated as to reasonable attorney rates) (awarding $425 per hour for senior employment attorney and $285 per hour for less experienced employment attorney); Carpaneda v. Domino's Pizza, Inc., 89 F.Supp.3d 219, 229 (D. Mass. 2015) (employment case finding $425 per hour for partner and $275 per hour for associate to reflect fair market rates); Meagher v. Andover School Committee, 2016 WL 70447, *8 (D.Mass. January 6, 2016) (awarding lead employment counsel $450 per hour and recently graduated associate $175 per hour); Lopes v. City of Brockton, 34 Mass.L.Rptr. 442 at *8 (Mass.Super.Ct. May 25, 2017) (awarding $575 and $500 per hour for two senior counsel and $250 per hour for junior counsel). That the rates in these cases represent, if anything, a moderate or low estimate on the prevailing rates, is confirmed by the affidavits of Hillary Schwab, Esq. and Phil Gordon, Esq. submitted nearly three years ago in relation to Plaintiffs' Motion for Contempt. See Dkt. Nos. 220-5 and 220-6 (showing approval as of that time of rates for Attorney Schwab at $600 per hour and Attorney Gordon at up to $650 per hour, along with approval of up to $355 per hour for less experienced counsel; collecting cases approving rates up to $785 per hour for partners and $495 per hour for associates on labor and employment matters).

Thus, the rates requested by the Plaintiffs – $450 per hour for Attorney Decter, $400 per hour for Attorney Goldstein, $300 per hour for Attorney McKissock, and $225-$250 for Attorney Groner – are well within the range that they could command in the Boston market for employment attorneys of like skill and experience. See Dkt. No. 220-5 and 220-6 (opining that these rates for Attorneys Decter and Goldstein and higher rates for Attorneys McKissock and Groner were reasonable three years ago for the skills and experience of the attorneys, based on affiants' personal knowledge of the Eastern Massachusetts labor and employment law market).

Their relevant experience and qualifications are outlined in Attorney Decter's Affidavit submitted in support of Plaintiffs' Motion for Contempt. See Dkt. No. 220-4, ¶¶ 1-7.

This Court has already approved the rates requested for Attorney Decter ($450 per hour) and Attorney Goldstein ($400 per hour) as of December 10, 2018. See Dkt. No. 233. The Court also approved a rate of $200 per hour for Attorney Groner and $175 per hour for Attorney McKissock at that time. Id. For the reasons stated supra, Plaintiffs believe these two rates were fairly below the market for attorneys of their experience at the time. However, Plaintiffs have used these rates as a starting point for work performed by Attorneys Groner and McKissock in 2018, when the prior rates were approved. Plaintiffs believe that Attorney Groner and McKissock's rates for work in 2019 and 2020 should reasonably be increased to $225 per hour to reflect their increased experience and the continued increase in market rates for attorneys. For similar reasons, Attorney Groner's rate was increased again to $250 per hour in 2021, at which point he had been a member of the bar for almost 10 years. Attorney McKissock, who has been a member of the bar for almost 8 years, became a partner at Segal Rotiman LLP on January 1, 2021, and a rate of $300 per hour has been requested after that period to reflect the market value of holding a partnership at a major employee-side firm in the Boston area. These rates are eminently reasonable, where attorneys with as little as five years' experience in plaintiff-side employment law have been awarded $300 per hour in recent years and at least one Court has found a rate of $450 per hour appropriate for a partner or an attorney with ten years' experience in civil rights litigation in the lower-cost Springfield market. See Smith v. City of Boston, 496 F.Supp.3d at 598; See also Schand v. McMahon, 487 F.Supp.3d at 83 (reasonable hourly rate for partners or attorneys in Springfield, Massachusetts, with ten years' experience on civil rights cases set at $450; attorneys with six years' experience awarded $305.96 per hour).

Taking these reasonable rates and multiplying them by reasonable hours expended, Plaintiffs arrive at the lodestar request of $26,985.00 in attorneys' fees. Plaintiffs have additionally expended $210.00 in costs in preparing this hearing.[6]

**III. Conclusion**

For the reasons set forth above, Plaintiffs respectfully request that this Court order payment of $27,195.00 in attorneys' fees and costs expended by Plaintiffs in post-discovery pursuit of unproduced text messages, analyzing the impact of the text messages ultimately produced, and moving to exclude the Late Texts.

Respectfully submitted,

JOSE PINEDA,
JOSE MONTENEGRO,
MARCO LOPEZ, and
JOSE HERNANDEZ,
on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ Nathan P. Goldstein
Nicole Horberg Decter, BBO No. 658268
Nathan P. Goldstein, BBO No. 666101
Jasper Groner, BBO No. 682403
Paige W. McKissock, BBO No. 688753
Segal Roitman, LLP
33 Harrison Avenue, 7th Floor
Boston, MA 02111
Telephone: (617) 742-0208
Fax: (617) 742-2187
ndecter@segalroitman.com
ngoldstein@segalroitman.com
jgroner@segalroitman.com
pmckissock@segalroitman.com

Dated: July 8, 2021.

[6] Counsel's costs for research and for court reporters in depositions that also pertain to the main case have been cut in proportion to the percentage of those expenditures that are reasonably attributable to the main case.

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing document and its exhibits has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 8th Day of July, 2021.

/s/ Nathan P. Goldstein
Nathan P. Goldstein

**LOCAL RULES 7.1 CERTIFICATION**

The undersigned counsel for Plaintiffs hereby certifies pursuant to Local Rules 7.1(a)(2) that he conferred with and attempted in good faith to resolve or narrow the areas of disagreement to the greatest extent possible with defense counsel.

/s/ Jasper Groner
Jasper Groner