UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE PINEDA, JOSE MONTENEGRO, MARCO LOPEZ, and JOSE HERNANDEZ, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>SKINNER SERVICES, INC., d/b/a SKINNER DEMOLITION, THOMAS SKINNER, DAVID SKINNER, ELBER DINIZ, and SANDRO SANTOS,<br><br>   Defendants. | Civil Action No.<br>16-12217-FDS |

### MEMORANDUM AND ORDER ON PETITIONER'S MOTION FOR ATTORNEYS' FEES AND COSTS

**SAYLOR, C.J.**

  This is an action for unpaid overtime and other wages by laborers at a demolition company. The present dispute concerns attorneys' fees and costs relating to defendants' failure to preserve, search for, and produce discovery.

  In November 2020, more than two years after the close of fact discovery, defendants produced certain text messages to the plaintiffs. The text messages concerned a central disputed issue in the case, and had been repeatedly requested by plaintiffs during the discovery process. Plaintiffs moved for exclusion of the text messages, which the Court granted. Plaintiffs have now moved for an award of attorneys' fees and costs in connection with that discovery issue. For the following reasons, the Court will grant the motion, although it will reduce the amount of the award from that requested by plaintiffs.

I. **Background**

    A. **Factual Background**

Skinner Services, Inc., doing business as Skinner Demolition, is a construction company based in Avon, Massachusetts. (Am. Comp. ¶ 15). It performs work at construction sites in Massachusetts, New Hampshire, Maine, Rhode Island, Connecticut, and New York. (*Id.* ¶ 16). Jose Pineda, Jose Montenegro, Marco Lopez, and Jose Hernandez are manual laborers who have worked for Skinner. (*Id.* ¶¶ 48-177).

Plaintiffs allege that, until February 2016, Skinner had a policy (the "Reporting Policy") requiring its laborers to report at approximately 5:45 a.m. to the yard at the company's Avon headquarters, where they would receive jobsite assignments, and to return to the yard after leaving their jobsites. (Am. Compl. ¶¶ 48-211). According to plaintiffs, they were not compensated for the time spent reporting to the yard, waiting for job assignments, loading tools and equipment into vehicles, traveling to jobsites, traveling back to the yard after leaving the jobsites, and unloading tools and equipment in the yard. (*Id.*). Plaintiffs allege that personnel who drove the crews to jobsites would be compensated for up to one hour's driving time, regardless of the amount of time actually spent driving. (*Id.*). They allege that as a result, they were not paid wages to which they were entitled, whether as overtime or otherwise. Defendants deny that such a mandatory reporting policy existed and contend that laborers were free to make their own travel arrangements and were properly compensated for their travel time. (Pl. SMF ¶¶ 136-37). In addition, defendants assert that going to the yard was voluntary because workers were informed of their jobsites in advance through the use of text messages and other forms of communication. (Supplemental Answer to Plaintiffs' Interrogatory No. 12, Dkt. No. 428, Ex. B).

B.    **Procedural Background**

Plaintiffs filed this collective action on November 2, 2016, seeking payment of wages under federal and Massachusetts law.

Fact discovery closed on October 1, 2018.

On September 13, 2019, defendants filed three motions for summary judgment. On September 28, 2020, the Court denied those motions except as to as to Counts One, Three, and Five asserted against Elber Diniz.

In November 2020, the parties engaged in mediation that was ultimately unsuccessful.

On November 20, 2020, defendants produced new text messages allegedly found on Thomas Skinner's phone. On April 1, 2021, plaintiffs submitted a motion *in limine* to preclude introduction of the late-produced text messages. After a hearing, the Court granted that motion in part, ruling that the evidence should be excluded.

Plaintiffs have now moved for attorneys' fees and costs relating to the motion *in limine*. For the reasons set forth below, the motion will be granted in part and denied in part.

**II.   Analysis**

A.    **Attorneys' Fees**

An award of attorneys' fees and costs is a standard remedy for a violation of Rule 37(c). If a party fails to disclose information and that failure was not substantially justified or harmless, the court "may order payment of the reasonable expenses, including [attorneys'] fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). *See Green v. Cabral*, 323 F. Supp. 3d 36, 101 (D. Mass. 2018) (awarding attorneys' fees because of defendants' untimely disclosure and violation of Rule 37(c)(1)); *Coons v. A.F. Chapman Corp.*, 2007 WL 4707653 at *6 (D. Mass. April 25, 2007) (awarding attorneys' fees incurred in preparing and arguing motion related to Rule 37(c)(1) violation); *Hipsaver Co., Inc. v. J.T. Posey Co.*, 497 F. Supp. 2d 96, 103-104 (D. Mass.

2007).

### 1. Method for Calculating Attorneys' Fees

In the First Circuit, courts follow the so-called "lodestar" method for calculating reasonable attorneys' fees. *Tenn. Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994); *see also Hutchinson v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011). The lodestar method involves "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In fashioning the lodestar, the first step is to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *see also Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984) (explaining that a court should subtract "hours which [are] duplicative, unproductive, excessive, or otherwise unnecessary."). "[T]he court has a right—indeed, a duty—to see whether counsel substantially exceeded the bounds of reasonable effort." *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988) (internal quotation marks and citation omitted).

After determining the number of hours reasonably expended, the second step in calculating the lodestar requires a determination of a reasonable hourly rate—a determination that is benchmarked to the "prevailing rates in the community" for lawyers of like "qualifications, experience, and specialized competence." *See Gay Officers League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001). In determining a reasonable hourly rate, a court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Grendel's Den*, 749 F.2d at 951. The moving party bears the burden of establishing an attorney's level of skill and experience, and when that party fails to provide

documentation as to the attorney's qualifications, a court may reduce the hourly rate. *See, e.g.*, *Martinez v. Hodgson*, 265 F. Supp. 2d 135, 143 (D. Mass. 2003).

Finally, after determining the reasonable number of hours and hourly rate, the court may adjust the lodestar upward or downward for other factors. *Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011). Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Diaz v. Jiten Hotel Mgmt., Inc.*, 741 F.3d 170, 177 n.7 (1st Cir. 2013) (quoting *Hensley*, 461 U.S. at 430 n.3).

### 2. Whether an Award of Fees is Appropriate

Here, the Court found that defendants' late disclosure of the text messages violated Rule 37(c)(1) because the delay was neither substantially justified nor harmless. (Transcript of Motion Hearing for Motion *in Limine*, Dkt. No. 463, p. 55). Under the circumstances, an award of fees is appropriate.

### 3. The Amount of Fees

The fees requested by plaintiffs are summarized in the table below.

| Lawyer | Hours Requested | Hourly Rate ($) | Fee Requested ($) |
|---|---|---|---|
| Nicole Horberg Decter | 0.1 | $450 | $45 |
| Nathan Goldstein | 29.7 | $400 | $11,880 |

| Jasper Groner | 60.5 | $225-$250[1] | $12,400 |
| Paige Walker McKissock | 0.2 | $300 | $60 |

In addition, plaintiffs seek $210 in legal research costs incurred in producing the motion *in limine*. Plaintiffs therefore seek a total of $27,195 in attorneys' fees and costs. (Pl. Mem. at 4, Dkt. No. 458).

### a. Reasonable Hourly Rates

As there is no objection to the hourly rate proposed by plaintiffs, the Court deems those rates reasonable and will adopt them for its calculation. As a consequence, all that remains is to address the dispute over the reasonableness of the hours billed.

### b. Hours Reasonably Expended

Plaintiffs contend that their attorneys should be compensated for 90.5 total hours spent litigating the motion *in limine*. In support of that request, plaintiffs' attorneys have attached an exhibit to their petition for attorneys' fees and costs which summarizes their hours, billed in tenth-of-an-hour increments. (Dkt. No. 458, Ex. 2).

It appears that the hours billed are excessive in multiple respects. For example, Attorney Groner billed 48.6 hours to review the late-produced texts and draft the motion *in limine*. Attorney Goldstein then spent more than 14.5 hours working on that motion. The motion *in limine* was entirely straightforward; the law was not unclear or undeveloped, and there was no substantial factual dispute as to what had happened. It is unclear, to say the least, why more than 63 hours of attorney time was required.

---

[1] Plaintiffs seek $225 per hour for Attorney Groner's time in 2019 and 2020, and $250 for his time in 2021.

6

Furthermore, the vagueness of the time entries provided makes it difficult for the Court to determine what specific tasks each attorney performed and how efficiently they performed them. Each attorney's hours, at least as documented in the exhibit provided to the Court, often include numerous individual tasks, making it impossible to discern how much time was allocated to which tasks. For example, in one entry, Attorney Groner billed one hour and 36 minutes for continuing to draft the motion *in limine*, conferring with the team on the motion, and emailing another attorney. On another occasion, Attorney Groner billed more than two hours to email and draft a reply brief for the motion *in limine*. Finally, Attorney Groner billed almost four hours for drafting the motion *in limine*, making a phone call with Attorney Cole, and sending emails with no specification regarding how much time was spent on what tasks.

Given the excessive hours billed and the vagueness of the billing information provided, the Court will reduce the award to a more reasonable amount.

### i.     Motion in Limine

As noted, Attorneys Groner and Goldstein prepared the motion *in limine*. They drafted a 27-page brief. (Dkt. No. 428). With exhibits, the total document amounted to 650 pages. (*Id.*) Although impossible to be exact due to the imprecise nature of the billing entries, this Court determined that the motion *in limine* took them 63.1 hours to complete (48.6 for Groner and 14.5 for Goldstein). (Dkt. No. 458, Ex. 2). The Court will discount the number of hours awarded for Groner's work to 20 hours and Goldstein's work to 5 hours.

### ii.     Reply Brief as to Motion in Limine

Attorneys Groner and Goldstein prepared the reply brief as to the motion *in limine*. They drafted a 12-page brief. (Dkt. No. 447). With exhibits, the total document amounted to 18 pages. (*Id.*) Although impossible to be exact due to the imprecise nature of the billing entries, this Court determined that the reply brief as to the motion *in limine* took them 10.7 hours to

complete (7.5 for Groner and 3.2 for Goldstein). (Dkt. No. 458, Ex. 2). The Court will discount the number of hours awarded for Groner's work to 5 hours and Goldstein's work to 2 hours.

### iii. Oral Argument Preparations

Attorneys Groner and Goldstein led the oral argument preparations. This Court determined that the oral argument preparations took them 8.1 hours (0.6 for Groner and 7.5 for Goldstein). (Dkt. No. 458, Ex. 2). Given the vagueness of these time entries, and the inability for the Court to discern what work was done to prepare for oral arguments, or why such an amount was reasonably necessary, the hours requested will be reduced. Accordingly, the Court will discount the total number of hours awarded to 3 hours (0.6 for Groner and 2.4 for Goldstein).

### iv. Conferences and Calls

Attorneys Groner, Goldstein, McKissock, and Decter requested hours for various teleconferences, phone calls, and emails. Although impossible to be exact due to the imprecise nature of the billing entries, it appears that plaintiffs requested a total of 8.6 hours related to these conferencing entries (3.8 for Groner, 4.5 for Goldstein, 0.2 for McKissock, and 0.1 for Decter). (Dkt. No. 458, Ex. 2). Due to the vagueness of the billing entries provided and what seems to be inflated hours, the Court will reduce the hours of Attorneys Groner and Goldstein for these entries. Accordingly, the Court will reduce the total hours awarded to 5.3 (2 for Groner, 2.9 for Goldstein, 0.2 for McKissock, and 0.1 for Decter).

### c. Adjusted Calculation

The Court will now factor the adjustments detailed above into its calculation of the number of hours to be credited to each attorney and then calculate the attorneys' fees based on the proposed rates.

For Attorney Groner, the Court will credit him with 27.6 hours of work. Five hours will

be credited at the rate of $225 per hour. The remaining 22.6 will be credited at the rate of $250 per hour. This produces a subtotal of $6,775.

For Attorney Goldstein, the Court will credit him with 12.3 hours of work at the proposed rate of $400 per hour, for a subtotal of $4,920.

For Attorney McKissock, the Court will credit her with 0.2 hours of work at the proposed rate of $300 per hour, for a subtotal of $60.

For Attorney Decter, the Court will credit her with 0.1 hours of work at the proposed rate of $450 per hour, for a subtotal of $45.

The additional $210 that plaintiffs seek for legal research costs incurred in producing the motion *in limine* will not be included in the final fee award due to the lack of specificity as to what that amount includes.

Based on these calculations, the Court finds that a reasonable attorneys' fee award is $11,800.

### III.   Conclusion

For the foregoing reasons, the motion for attorneys' fees is GRANTED in the amount of $11,800, and is otherwise DENIED.

**So Ordered.**

Dated:  December 13, 2021

/s/  F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court