## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSE PINEDA, JOSE MONTENEGRO, MARCO LOPEZ, and JOSE HERNANDEZ on behalf of themselves and all others similarly situated, | ) ) ) ) |
|  | ) C.A. No. 1:16-cv-12217 |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| SKINNER SERVICES, INC. d/b/a SKINNER DEMOLITION, THOMAS SKINNER, DAVID SKINNER, and SANDRO SANTOS | ) ) ) |
|  | ) |
| Defendants, | ) |

## MEMORANDUM IN SUPPORT OF ASSENTED-TO
## MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

Plaintiffs Jose Pineda, Jose Montenegro, Marco Lopez, and Jose Hernandez ("Named Plaintiffs"), individually and as Class and Collective representatives and Defendants Skinner Services, Inc. d/b/a Skinner Demolition, Thomas Skinner, David Skinner, and Sandro Santos have reached a Settlement Agreement in this wage and hour case. Plaintiffs respectfully request that the Court 1) preliminarily approve the Settlement Agreement; 2) approve the parties' proposed form of Notice; and 3) authorize the parties to issue the Notice to the previously certified members of the Reporting and Uniform Classes and Fair Labor Standards Act Collective (collectively "Class Members") pursuant to the proposed notice process. The Settlement Agreement, attached hereto as Exhibit A, is the fair, reasonable, and adequate result of extremely lengthy and contentious litigation, extensive discovery, and hard-fought arms-length bargaining. The Notice, attached hereto as Exhibit B, is fair and reasonable, in that it provides a clear explanation of the case, the Settlement Agreement, the options available to Class

1

Members, and the means for exercising those options. Additionally, the Parties' proposed notice process will provide Class Members with sufficient time and a simple process to opt-out or to file objections or comments. Finally, Defendants have assented to this Motion. As such, this Motion should be granted.

## I.     Factual and Procedural Background

### A.  Case Background

On November 2, 2016, Named Plaintiffs filed a Class and Collective Action Complaint against Defendants and former Defendant Elber Diniz, alleging claims for unpaid minimum, straight time, and overtime wages for travel, reporting, and jobsite work time, transportation expenses, and illegal deductions for uniforms from employees' paychecks. Dkt. No. 1. On December 9, 2016, the Named Plaintiffs filed an Amended Complaint, adding in non-class allegations of retaliation against the Named Plaintiffs. Plaintiffs brought their claims pursuant to state and federal wage and hour laws. Dkt. No. 11.

On September 6, 2017, the Court conditionally certified a Collective under the Fair Labor Standards Act ("FLSA") to pursue reporting and travel time claims. Dkt. No. 69. After extensive discovery by both parties, the Plaintiffs moved for class certification on December 21, 2018, Dkt. No. 242, which the Court granted on August 8, 2019, Dkt. No. 307. The Court certified a class of Plaintiffs who had reporting and travel time claims ("Reporting Class") and a separate class of Plaintiffs who had claims based on deductions for uniforms from their paychecks ("Uniform Class").

On September 13, 2019, Defendants filed three Motions for Summary Judgment. Dkt. Nos. 310, 311, and 312. Plaintiffs opposed these Motions and on September 28, 2020, the Court denied Defendants' Motions except as to individual liability for Defendant Elber Diniz on

Counts 1, 3, and 5. Dkt. No. 385. Defendant Elber Diniz was subsequently dismissed from the case by stipulation on December 23, 2021. Dkt. No. 510.

On October 18, 2019, Plaintiffs moved for a preliminary injunction and prejudgment attachment. Dkt. No. 328. The Court granted that Motion on December 23, 2019, Dkt. No. 358, and modified it and partially stayed it at Defendants' request on January 23, 2020, Dkt. No. 370. Defendants filed an interlocutory appeal, and on December 31, 2021, the First Circuit Court of Appeals upheld the preliminary injunction and prejudgment attachment. Dkt. No. 512.

In December 2021, after review of the evidence of violations, Plaintiffs withdrew their minimum wage, retaliation, and transportation expense claims. Dkt. No. 510.

The Court scheduled this Case for a two-week trial in January 2022, which was rescheduled to March 2022. Dkt. No. 520. The Parties continued to vigorously dispute the key facts of the case, including whether Plaintiffs were required to report to Defendants' headquarters prior to reporting to jobsites, what, if any, work Plaintiffs performed there, the frequency with which they reported, whether deductions for Plaintiffs' uniforms from their paychecks were voluntary, and the liability of individual Defendants. The primary evidence on these key facts at trial would have largely been opposing witness testimony.

The Parties have engaged in extensive settlement talks, including mediation of this dispute before Judge Patrick King on November 3, 2020, which was not successful. After substantial bargaining and careful and informed consideration of the Parties' chances of success, Defendants' available assets, and Plaintiffs' ability to collect on a judgment, the Parties reached a Settlement Agreement under the terms listed below.

## B.  Settlement Terms

### 1.  Monetary Terms of the Settlement.

The Settlement Agreement provides for Defendants to pay a total of $650,000 as the "Gross Settlement Amount." Defendants will pay the entirety of the Gross Settlement Amount into escrow by April 15, 2022. The Settlement Agreement provides for security in the even this payment is not made.

The $650,000 Gross Settlement Amount will be distributed in the following manner:

- $107,944.15 will be paid to Class Counsel as reimbursement for expenses actually incurred during the over five-year course of this case, including expert fees, filing fees, postage, printing, hearing and deposition transcripts, translators, mileage, and electronic legal research costs.

- Two-thirds of the remaining net $542,055.85 will be distributed to the Reporting and Uniform Classes by a third-party Class Administrator in the following manner:

    o $36,000 as incentive payments to the Named Plaintiffs, with $12,000 being paid to the Lead Plaintiff, Jose Pineda, and $8,000 to the remaining three Named Plaintiffs.

    o The remaining $325,370.57 to each Class Member as a *pro rata* share of their estimated damages based on Exhibits 2B and 5 of the Expert Report of David Breshears, CPA/CFF, submitted to the Court as Dkt. No. 424-1. This amount represents a recovery of 73.5% of the wages lost by each Class Member. If any Class Member opts out of the Settlement Agreement, their recovery will be reallocated proportionally to all remaining Class Members.

- The final third of the net $542,055.85 to be paid to Class Counsel for attorneys' fees. The amount of this payment is $180,685.28.

The distributions listed above will be sent to all Class Members who do not opt out of the Settlement Agreement. Class Members do not need to file a claim or take any additional actions in order to receive their proportion of the recovery. If the Class Administrator is not able to locate a Class Member, the amount to be paid to that Class Member will be distributed to the Rhode Island Center for Justices, a charity unaffiliated with any of the Parties to this case and which primarily serves underprivileged communities in Rhode Island, where many of the Class Members reside.

### 2. Scope of the Release.

The Settlement Agreement contains a mutual release of claims between the Parties. The release covers all claims to the date of the execution of the Settlement Agreement, excluding those arising under the Settlement Agreement. The complete terms of this release are set forth in the Agreement. It will be included in the Notice issued to the proposed settlement Class Members.

### 3. Proposed Notice Process and Final Approval Schedule.

The Parties submitted a recommended Joint Scheduling Statement regarding approval of the Class Settlement in this matter on February 17, 2022, which was amended on March 11, 2022. See Dkt. No. 523 and 524. Under that revised proposed schedule, the Plaintiffs will notify Class Members of the proposed Settlement through a third-party Claims Administrator by May 6, 2022, or within twenty-one days of the Court's preliminary approval of the Settlement. Notice will be mailed individually to the last known address of each Class Member. The Notice will be in the form attached hereto as Exhibit B. The Notice provides a succinct and plain-language

description of the case, the terms of the Settlement, and the options available to each Class Member – remain in the Class, ask to be excluded, or object to the Settlement. It also notifies each Class Member of a close estimate of the amount that they would be entitled to if they remained in the Class. Finally, it informs the recipient of the method to opt-out, comment on, or object to the proposed settlement.

Under the Joint Scheduling Statement, the Class Members would have thirty days from the date of mailing of the Notice to either opt-out of the Settlement or to submit comments or objections. The process for each is simple. The Class Member need only submit a signed statement that they wish to opt out of the Class to the Class Administrator. Should the Class Member wish to object to or comment on the Settlement, they may submit their objections or comments directly to the Court and mail copies of them to the Parties.

The Joint Scheduling Statement also provides that the Plaintiffs individually or jointly with the Defendants will file a Motion for Final Approval of the Settlement by June 17, 2022, or within fourteen days from the opt-out and objection deadline, whichever is later. Finally, the Statement indicates that the fairness hearing would occur on the later of July 1, 2022, or thirty days from the opt-out and objection deadline. This timeline is consistent with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.

## II.   Argument

### A.  The Settlement Agreement is Fair, Reasonable, and Adequate.

The Court should approve the Settlement Agreement, because it is the fair, reasonable, and adequate result of lengthy, arms-length negotiations informed by years of vigorous litigation of the core disputes in this case. Generally speaking, compromise is the favored outcome in nearly any lawsuit. Newberg on Class Actions, § 11:41 ("The

compromise of complex litigation is encouraged by the courts and favored by public policy"); see also E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 73 8, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement" of class claims). The advantages to the parties and the courts are particularly apparent in the compromise of class actions, which are "often complex, drawn-out proceedings demanding a large share of finite judicial resources." Mayfield v. Barr, 985 F.2d 1090, 1092 (D.C. Cir. 1993.

Before a class settlement may be effectuated, it must be approved by the Court. Approval typically occurs in a two-step process. The first step is preliminary approval pursuant to Fed. R. Civ. P. 23(e)(1)(B). At that stage, the "judge reviews the [proposed settlement] … to determine whether it is sufficient to warrant public notice and hearing." Manual for Complex Litigation, Fourth, § 13.14 at 172-173. The burden at this step is lower than for final approval. To grant preliminary approval, the Court need only determine that it "will likely be able to… approve the proposal" under the standards for final approval.[1]

The baseline standard for final approval is that the settlement be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23 lists the following subsidiary factors that the Court should consider in deciding whether a class settlement is fair, reasonable, and adequate: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method

---

[1] Rule 23 also requires the Court to determine it will likely be able to "certify the class for purposes of judgment on the proposal." In this case, the Court has already certified the Classes for which settlement is proposed, so this requirement is easily satisfied.

of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (iv) any agreement to be identified under Rule 23(e)(3); and (D) the proposal treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Here, all factors weigh in favor of approval.[2]

### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class.

There can be no doubt that Class Representatives and Class Counsel have adequately represented the Class throughout this litigation. As the Court is aware, this has been a vigorously contested matter on which Class Counsel has spared no effort in coming to the best possible resolution for the Class, including through voluminous written discovery, many depositions, motion practice on key issues, including security for any judgment, and successful litigation of a contempt motion through an evidentiary hearing. See, generally, Fed. R. Civ. P. 23, Advisory Committee Notes, 2018 Amendment (looking at the nature or amount of discovery as one factor in adequacy). Moreover, the Class Representatives have actively partaken in the case, submitting to full-day depositions, providing discovery, submitting multiple declarations to the court, and being instrumental in communication and solidarity among Class Members. Finally, the Court has previously found that Class Counsel and Class Representatives were adequate for their roles in certifying the Rule 23 Classes in this matter. Dkt. No. 307. See Newberg on Class Actions, § 13:49 (Dec. 2021 Update) (noting that adequacy in this context is "redundant of the requirements

---

[2] Plaintiffs would briefly note that the factor identified in Fed. R. Civ. P. 23(e)(2)(C)(iv) is inapplicable to this Settlement. That section requires consideration of any agreement to be identified under Rule 23(e)(3). Rule 23(e)(3) further requires that "the parties seeking approval must file a statement identifying any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3). Here, there were no agreement made in connection with the Settlement Agreement other than the Settlement Agreement itself.

of Rule 23(a)(4) and Rule 23(g)", both of which were considered in class certification). Thus, this factor plainly weighs in favor of approval of the Settlement Agreement.

### 2.   The Proposed Settlement Was Negotiated at Arms' Length.

Plaintiffs and Defendants have been in what could be moderately described as an adversarial relationship throughout this litigation. The Parties have filed dozens of Motions and taken extensive depositions. Defendants have appealed critical rulings and filed multiple Motions for Summary Judgment. Plaintiffs sought and obtained a ruling of contempt related to the firing of a Class Member and sought and obtained a preliminary injunction. Negotiations regarding settlement have been ongoing to various degrees for years at this point. These negotiations included an unsuccessful attempt at mediating this dispute before Judge King on November 3, 2020. These talks have intensified as the prospect of trial loomed. Only after the parties were fully informed about the strengths of their cases and had the imminent pressure of trying this case were they able to reach a mutually agreeable settlement. The settlement was plainly negotiated at arms-length and this factor weighs in favor of approval.

### 3.   The Relief Provided to the Class Is Adequate.

#### a.   The Relief Provided Is Adequate in Light of the Costs, Risks, and Potential Delays in Proceeding to Trial.

The Settlement Agreement provides for restitution of the vast majority of the lost wages the Classes would be entitled to as single damages if they prevailed at trial. The amounts owed to each member of the Classes was meticulously reconstructed by the Plaintiffs' Expert. Based on these estimates, the $325,370.57 to be distributed to Class Members represents 73.5% of the single damages restitution Plaintiffs would be entitled to at trial. Such a substantial recovery is fair and adequate. See, e.g., In re Rite Aid Corp. Sec. Litig., 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5%

and 6.2% of the class members' estimated losses"). While Plaintiffs could potentially be awarded multiple damages under either the Fair Labor Standards Act or state wage and hour laws if they were victorious at trial, there are multiple substantial risks, costs, and delays associated with proceeding that demonstrate the adequacy of the Settlement Agreement.

If the Parties proceeded to trial, Plaintiffs would bear a risk of not succeeding at trial or being unable to substantially collect on any judgment, even if they were victorious. The Plaintiffs and Defendants vigorously dispute the key facts of this case, including, critically, whether there was any unwritten requirement that the members of the Reporting Class and FLSA Collective[3] arrive at Defendants' Avon, Massachusetts headquarters prior to each workday. While Class Counsel strongly believes in the strength of Plaintiffs' case, at the end of the day, the jury would have to assess the credibility of the Plaintiff and Defense witnesses on this and other key issues. This process is inherently uncertain and risky. Moreover, the jury's assessment would be rendered even less predictable because many of the witnesses in this case would testify using a translator, making the subtleties of their statements a step further removed from the jury. As such, proceeding to trial presents a real risk that the Plaintiffs would not recover any amounts.

If Plaintiffs were able to prove liability and obtain a significant judgment, recovery of that amount is far from certain. Initially, the liability of Defendants David Skinner and Sandro Santos is the subject of intense dispute between the Parties. Much of Plaintiffs' evidence concerning the potential liability of David Skinner is circumstantial. Defendants have also indicated that Defendant Skinner Services, Inc., Thomas Skinner, and Sandro Santos do not have substantial assets from which a larger judgment could be paid. The possibility of corporate or individual bankruptcy reducing recovery is not insignificant. Thus, even if Plaintiffs succeeded at

---

[3] The Reporting Class represents the vast majority of potential damages in this case, with a potential recovery of almost 25 times as much as the Uniform Class.

trial, the Class Members might not actually recover substantially more than they would under this Settlement Agreement and could be left with less.

Moreover, the costs associated with proceeding to trial, both in terms of out-of-pocket expenses and potential additional attorneys' fees, are substantial. This case was slated for a two-week trial with 15 to 20 witnesses, including costly expert testimony. Further, there is the potential that any recovery would be further delayed, and additional costs incurred, by appeals after a jury verdict, as Defendants have already filed interlocutory appeals on two different aspects of this case. Finally, if Defendants did not have liquid assets to pay for the amount of the judgment, attempts to collect on the judgment would involve additional costs and delays. Given all of the above, the substantial recovery of 73.5% of potential single damages at trial is more than adequate and weighs in favor of approval of the Settlement Agreement.

**b. The Proposed Method of Distributing Relief to the Class Is Effective and Requires No Action by Class Members.**

The proposed method of distributing relief to the Class is simply and effectively aimed to provide the maximum number of Class Members with relief. Simply put, individual recoveries under the Settlement Agreement will be mailed directly to all Class Members who did not opt out of the case. Class Members do not need to file a claim to receive their recovery, let alone have such a claim approved. Indeed, Class Members are not required to take any action to receive their portion of the Settlement. As such, this factor plainly weighs in favor approval of the Settlement Agreement.

**c. The Proposed Allocation for Attorneys' Fees Is Fair and Reasonable.**

The Parties' agreement provides that Plaintiffs will receive one-third of the Gross Settlement Amount after out-of-pocket expenses associated with the litigation so far have been

reimbursed. That proposed allocation is standard, fair, and reasonable and weighs in favor of preliminary approval by the Court, particularly where Class Counsel has diligently litigated the case for over five years prior to obtaining the present Settlement.[4] Named Plaintiffs signed contingency retainer agreements which provide for a one-third fee award unless a greater amount was specifically awarded by the Court. The proposed Notice will inform the settlement Class Members concerning this proposed allocation.

Courts in Massachusetts have consistently approved a one-third allocation of attorneys' fees in cases involving wage and employment disputes, where the parties have reached a common fund settlement. See Sennott v. Gordon Food Service, Inc., Case No. 1:14-cv-11402, Dkt. No. 76 (Saylor, J.); Cormier, Case No. 1:13-cv-11822, Dkt. No. 138 (Burroughs, J.); Dvornikov, Case No. 1:15-cv-13286, Dkt. No. 86 (Burroughs, J.); Matamoros v. Starbucks Corp., Case No. 1:08-cv-10772, Dkt. Nos. 161, 167, 169 (Gorton, J.); Awuah v. Coverall North America, Inc., Case No. 1:07-cv-10287, Dkt. Nos. 635, 640 (Young, J.); Hayes v. Aramark, Case No. 1:08-cv-10700, Dkt. No. 43 (Zobel, J.); Cutter v. HealthMarkets, Inc., Case No. 1:10-cv-

---

[4] To the degree it is relevant to this factor, it is wholly fair and reasonable for the payment of Class Counsel's expenses to be taken out of the Gross Settlement Amount before the remaining amount is apportioned between the Classes (two-thirds) and Class Counsel's fees (one-third). This case has been lengthy and costly, with Class Counsel fronting the out-of-pocket expenses to the Classes at every step of the five-year-plus process. There were large costs associated with intensive factual discovery involving many depositions, research necessary for a slew of hotly contested motions and two appeals, and the expense of an expert who was able to liquidate Plaintiffs' damages and provide for the allocation of those damages among class members. All of these costs were necessary to bring the case to a place where the parties were able to reach a compromise settlement and would still need to be paid were Plaintiffs successful at trial. Finally, paying for expenses out of the gross amount prior to allocation of the net to Plaintiffs and counsel is common practice. See, e.g., Mercier v. United States, 156 Fed. Cl. 580, 593 (2021) ("well settled" that expenses reasonably incurred in creating common fund class settlement may be awarded out of the fund); In re U.S. Bioscience Sec. Litig., 1994 WL 485935, at *15 (E.D. Pa. May 23, 1994) (awarding expenses in addition to contingency fee in class settlement); Anselmo v. W. Paces Hotel Grp., LLC, (D.S.C. Nov. 19, 2012) (same). Plaintiffs will submit contemporaneous records of these expenses along with their Motion for Final Approval.

11488, Dkt. Nos. 77-80 (Tauro, J.); <u>Keily v. Trip Advisors, LLC</u>, Case No. 1:08-cv-11284, Dkt. No. 50, 52-53 (Wolf, J.).[5]

Public policy considerations also weigh in favor of the proposed one-third fee award based on the claimed portion of the gross settlement fund. The proposed award recognizes the vital role that contingency arrangements play in making capable and experienced counsel available to individuals who cannot afford hourly fees – which is essentially everyone who is not independently wealthy. <u>See</u>, e.g., <u>Beckman v. KeyBank, N.A.</u>, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) ("Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.' The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights"), <u>quoting</u> <u>Sand v. Greenberg</u>, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010); <u>In re Giant Interactive Group Inc. Sec. Litigation</u>, 2011 WL 5244707, at *10 (S.D.N.Y. Nov. 2, 2011) ("[T]he Court finds [th]at public policy supports the award of a 33% fee in this case, the better to 'attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so'."), <u>quoting</u> <u>In re WorldCom, Inc. Securities Litigation</u>, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005).

---

[5] Indeed, a 2010 survey of attorneys' fee awards analyzing class settlements approved by courts in the First Circuit between 1993 and 2002 ultimately found that courts approved wage and employment class settlements with fee provisions in the range of one-third. <u>See</u> Theodore Eisenberg & Geoffrey P. Miller, Attorneys' Fees & Expenses in Class Action Settlements: 1993–2008, J. of Empirical Legal Stud. 248 (2010). That survey found that in employment class settlements involving fee-shifting statutes (as is the case here), the approved median attorneys' fee award was 37.5 percent, while the mean attorneys' fee award was 31.8 percent, with a standard deviation of 21.7. <u>See</u> <u>id</u>. In addition to the data itself, the survey also found "[s]ubstantial empirical evidence … that a one-third fee is a common benchmark in private contingency fee cases," and that "fee requests falling within one standard deviation above or below the mean should be viewed as generally reasonable and approved by the court unless reasons are shown to question the fee." <u>Id.</u> at 8, 38.

Lastly, a one-third fee award aligns the interests of class counsel and the class and further recognizes that attorneys who work on a contingency basis incur substantial risk in pursuing class litigation, since such cases like this one can go on for years and can just as likely result in no recovery as they can result in a substantial settlement. See In re Giant Interactive Group, 2011 WL 5244707, at *10 (awarding one-third fee; "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for nearly four years").

Although not required, courts in the First Circuit will sometimes conduct a "lodestar cross-check" in awarding attorneys' fees in a class settlement. See In re Relafen, 213 F.R.D. 52, 81 (D. Mass. 2005); New England Carpenters Health Benefits Fund v. First Databank, Inc., 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009) ("The lodestar approach … can be a check or validation of the appropriateness of the percentage of funds fee, but is not necessary."). The "lodestar method requires the court to determine the number of hours reasonably expended multiplied by a reasonable hourly rate for attorneys of similar skill within that geographic area," and then to compare that figure to the total requested award by dividing the requested award by the lodestar figure. In re Relafen, 231 F.R.D. at 77.

Here, while a lodestar cross-check would be premature because Plaintiffs are only seeking preliminary approval, Plaintiffs would note that they have expended in excess of 6,800 hours on this case. The $180,685.28 allocated to attorneys' fees in the settlement agreement represents a payment of less than $27 per hour for Class Counsel's time. This indicates that a lodestar cross-check would yield a fee award many times over what Plaintiffs would be awarded

under the Settlement Agreement. As such, the amount of the fee award in this case weighs in favor of approval of the settlement.

> ### 4. The Settlement Agreement Provides the Same Proportion of Relief to All Class Members, Outside of Modest Service Awards to Named Plaintiffs.

Finally, the Settlement Agreement treats Class Members equitably relative to each other. The Settlement Agreement uses the analysis contained in the Expert Report created by Mr. Breshears, an outside expert in this field, to determine how to allocate the damages among Class Members. All Class Members will receive the same proportion of their lost wages – 73.5% – as estimated in the Expert Report. This proportional payment for all Class Members is self-evidently adequate.

The only exception to this proportional allocation is the payment of modest additional service awards to the four Named Plaintiffs who took on the substantial additional work and risk associated with leading this case. As noted supra, unlike other Class Members, the Named Plaintiffs submitted to full-day depositions, provided multiple declarations, and worked as key loci of communication with the Class Members. Jose Pineda, the Lead Plaintiff, provided more assistance in each of these regards than the other three Named Plaintiffs. The payment of such service awards and the amount of the awards at issue ($12,000 for Mr. Pineda, and $8,000 for each of the remaining Named Plaintiffs) is reasonable under the circumstances. Without the four Named Plaintiffs, this case could not and would not have been pursued, let alone litigated with the degree of success that it has been. See In re Relafen, 231 F.R.D. at 82 ("[i]ncentive awards are recognized as serving an important function in promoting class action settlements, particularly [where] … the named plaintiffs participated actively in the litigation"); Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each of

three named plaintiffs in race discrimination class action; the lead plaintiffs "took risks, bore hardships, and made sacrifices that absent class members did not").

Moreover, the service awards in this case are consistent with those awarded in other class action cases in Massachusetts. See, e.g., Dvornikov, Case No. 1:15-cv-13286, Dkt. No. 86 (incentive awards of $10,000 to each of four named plaintiffs) Godt v. Anthony's Pier Four, Inc., Suffolk Civ. A. No. 07-3919 ($25,000 incentive payment for lead plaintiff); Shea v. Weston Golf Club, Middlesex Civ. A. No. 02-1826 (same); Fernandez v. Four Seasons Hotel, Suffolk Civ. A. No. 02-4689 (same); Banks v. SBH Corp. (Grill 23), Suffolk Civ. A. No. 04-3515 (same). A 2006 study of incentive awards in class settlements found that the average incentive award approved by courts at that time was $15,992 – significantly more than the amounts sought by Plaintiffs here. See Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1308 (2006).

Finally, service awards are particularly important in employment class litigation because the class representatives put their name on the line. This is a meaningful risk because "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005). This risk is obviously enhanced for the Lead Plaintiff, whose name appears first on any caption of the lawsuit. When this lawsuit was filed in 2016, all of the Named Plaintiffs were still employed by Defendants and one of them remained employed for the duration of the litigation. A Class Member was fired in the course of this litigation and his termination was the subject of contempt proceedings. Thus, the service awards

included in the Settlement Agreement are fair and reasonable in light of the significant additional contributions and risks undertaken by the Named Plaintiffs. They add to, rather than detract from, the Settlement Agreement's equitable treatment of Class Members relative to each other.

### B.  The Class Notice is Fair, Reasonable, and Adequate.

The Notice drafted by the Parties is fair, reasonable, and adequate. The proposed Notice provides a clear and succinct explanation of the case, the terms of the settlement, and the options available to Class Members. As such, it "contain[s] enough information about the settlement and its implications for participants to enable Class Members to make an informed decision about whether to be heard concerning the settlement." 2 McLaughlin on Class Actions § 6:17 (10th ed.) (collecting cases). As such, this Court should approve the Notice.

### C.  The Parties' Notice Process Provides Sufficient Time and a Simple Process for Class Members to Opt-Out, Comment, or Object.

Finally, the Notice process is fair and reasonable. The Notice will be provided by first-class mail to the last known address of each Class Member.[6] This is widely regarded as the best practicable means of disseminating information about a class settlement. See id. ("courts have consistently held that first-class mail addressed to class members' last known address … [is] sufficient to satisfy the notice requirements") (collecting cases); see also In re Compact Disc Minimum Advertised Price Antitrust Litig., 216 F.R.D. 197, 218 (D. Me. 2003) ("individualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances").

---

[6] The Class Administrator will work with information supplied by the Parties and through independent research to determine the last known address for each Class Member.

In addition, all Class Members will be given 30 days from the mailing of the Notice to opt-out of the Settlement or to comment on or object to the Settlement. Any Class Member can opt-out simply by sending a signed, written statement to the Class Administrator. Likewise, any Class Member may comment on or object to the Settlement agreement by sending a written statement of their comments or objections to the Court and the Parties. This standard and easy process for providing Notice and for Class Members to opt-out of, object to, or comment on the Settlement should be approved by the Court.

**III.    Conclusion**

For the reasons stated <u>supra</u>, Plaintiffs respectfully request that the Court 1) preliminarily approve the Settlement Agreement; 2) approve the parties' proposed form of Notice; and 3) authorize the parties to issue the Notice to the Reporting and Uniform Classes and FLSA Collective pursuant to the proposed Notice process.

Respectfully submitted,

JOSE PINEDA,
JOSE MONTENEGRO,
MARCO LOPEZ, and
JOSE HERNANDEZ
on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ Jasper Groner
Nicole Horberg Decter (BBO# 658268)
Nathan Goldstein (BBO# 666101)
Paige McKissock (BBO# 688753)
Jasper Groner (BBO# 682403)
**SEGAL ROITMAN, LLP**
33 Harrison Avenue, 7th Floor
Boston, MA 021111
Telephone: (617) 742-0208
Facsimile: (617) 742-2187
Date: March 18, 2022      jgroner@segalroitman.com

18

## **CERTIFICATE OF SERVICE**

I hereby certify that the above Motion has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent this 18th day of March, 2022.

/s/ Jasper Groner
Jasper Groner