## SETTLEMENT AGREEMENT

This Settlement Agreement is made by and between José Pineda, Marco Lopez, José Montenegro, and José Hernandez (collectively "Named Plaintiffs"), individually and on behalf of members of the Classes and Collective previously certified in <u>Pineda, et. al. v. Skinner Services, Inc. et. al.</u>, Case No. 1:16-cv-12217-FDS ("Case"), and Defendants Skinner Services, Inc., Thomas Skinner, David Skinner, and Sandro Santos (collectively "Defendants"). Plaintiffs and Defendants are collectively referred to in this Agreement as the "Parties."

## RECITALS

1.  On November 2, 2016, Named Plaintiffs filed a Class and Collective Action Complaint against Defendants and former Defendant Elber Diniz in the United States Court for the District of Massachusetts ("the Court"), alleging claims for unpaid minimum, straight time, and overtime wages for travel, reporting, and jobsite work time, transportation expenses, and illegal deductions for uniforms from employees' paychecks. On December 9, 2016, the Named Plaintiffs filed an Amended Complaint, adding in non-class allegations of retaliation against the Named Plaintiffs. Plaintiffs brought their claims pursuant to state and federal wage and hour laws.

2.  On September 6, 2017, the Court conditionally certified a Collective under the Fair Labor Standards Act ("FLSA") to pursue reporting and travel time claims. After extensive discovery by both parties, the Plaintiffs moved for class certification on December 21, 2018, which the Court granted on August 8, 2019. The Court certified a class of Plaintiffs who had reporting and travel time claims ("Reporting Class") and a separate class of Plaintiffs who had claims based on deductions for uniforms from their paychecks ("Uniform Class").

3. On September 13, 2019, Defendants filed three Motions for Summary Judgment. Plaintiffs opposed these motions and on September 28, 2020, the Court denied Defendants' Motions except as to individual liability for Defendant Elber Diniz on Counts 1, 3, and 5. Defendant Elber Diniz was subsequently dismissed from the case by stipulation on December 23, 2021.

4. On October 18, 2019, Plaintiffs moved for a preliminary injunction and prejudgment attachment. The Court granted that Motion on December 23, 2019, and modified it and partially stayed it at Defendants' request on January 23, 2020. Defendants filed an interlocutory appeal, and on December 31, 2021, the First Circuit Court of Appeals upheld the preliminary injunction and prejudgment attachment.

5. In December 2021, after review of the evidence of violations, the Plaintiffs withdrew their minimum wage, retaliation, and transportation expense claims.

6. The Court scheduled this Case for a two-week trial in March 2022. The Parties vigorously disputed the key facts of the case, including whether Plaintiffs were required to report to Defendants' Avon, Massachusetts headquarters prior to reporting to jobsites, what, if any, work Plaintiffs performed there, the frequency with which they reported, whether deductions for Plaintiffs' uniforms from their paychecks were voluntary, and the liability of individual Defendants. The primary evidence on these key facts at trial would largely be opposing witness testimony.

7. The Parties have engaged in extensive settlement talks, including mediation of this dispute before Judge Patrick King on November 3, 2020, which was not successful.

8.     After substantial bargaining and careful and informed consideration of the Parties' chances of success, Defendants' available assets, and Plaintiffs' ability to collect on a judgment, the Parties have reached this Settlement Agreement.

9.     Named Plaintiffs, the Collective, and Classes (collectively "Plaintiffs") and Defendants intend this Settlement to resolve the lawsuit. Counsel for the Plaintiffs, Segal Roitman, LLP ("Class Counsel") and Counsel for the Defendants, Aceto, Bonner, & Cole PC ("Defense Counsel") shall work together as stated below to implement this Settlement Agreement.

## SETTLEMENT AMOUNTS

10.     **Gross Settlement Amount.** Subject to the terms and conditions of this Agreement, the Gross Settlement Amount that Defendants will pay is $650,000. All of the Gross Settlement Amount will be distributed pursuant to this Settlement Agreement and none of it will revert to Defendants.

11.     **Payment of Gross Settlement Amount.**

(a)  Defendants will pay the Gross Settlement Amount into escrow in Defense Counsel's IOLTA account no later than April 15, 2022. As of the date of this agreement, $100,000 of the Gross Settlement Amount has been paid into escrow.  Defendants will hold the Gross Settlement Amount in escrow in Defense Counsel's IOLTA account pending final approval of this Settlement Agreement by the Court.

12.     Defendants agree to provide a Lien in the amount of the Gross Settlement Amount, less any amounts held in escrow in Defense Counsel's IOLTA account on the date of execution, in favor of Plaintiffs on all of Defendant Skinner Service's equipment and machinery pending payment of the Gross Settlement Amount into escrow held by Defense Counsel.

Plaintiffs will promptly file a UCC-1 Financing Statement reflecting this Lien after this Settlement Agreement is executed. Should Defendants fail to pay the Gross Settlement Amount into escrow held by Defense Counsel by April 15, 2022, Plaintiffs shall have the right to immediately enforce the Lien to secure payment of the full Gross Settlement Amount. If the Defendants pay the Gross Settlement Amount into escrow held by Defense Counsel by April 15, 2022, Plaintiffs will promptly terminate the Lien by filing a UCC-3 Financing Statement Amendment.

13. Defendants agree to execute an Agreement for Judgment for the entirety of the Gross Settlement Amount that the Plaintiffs will hold in escrow pending payment of the Gross Settlement Amount into escrow held by Defense Counsel. Should Defendants fail to pay the Gross Settlement Amount into escrow held by Defense Counsel by April 15, 2022, Plaintiffs shall have the right to immediately file the Agreement for Judgment with the Court. If the Defendants pay the Gross Settlement Amount into escrow held by Defense Counsel by April 15, 2022, Plaintiffs will promptly destroy the Agreement for Judgment.

14. **Allocation of Gross Settlement Amount.** After the Court's Final Approval of the Settlement Agreement, Class Counsel, with the aid of the Class Administrator as indicated below, shall distribute the Gross Settlement Amount in the following manner:

(a) **$107,944.15** shall be paid to Class Counsel for reimbursement of expenses incurred during the course of this case. This amount reflects contemporaneously recorded costs associated with representation of the Plaintiffs, including expert fees, filing fees, postage, printing, hearing and deposition transcripts, translators, mileage, and electronic legal research costs. This amount includes a reserve payment of **$4,578.75** for the costs of administration of the Settlement based on the estimate of the fees provided by the proposed Class Administrator.

(b) **$180,685.28** representing one-third of the remaining Gross Settlement Amount after the above-referenced payment shall be paid as attorneys' fees to Class Counsel.

(c) **$361,370.57** representing two-thirds of the remaining Gross Settlement Amount after the above-referenced payments shall be distributed to the Members of the Reporting and Uniform Classes and the Collective ("Class Members") by the Class Administrator as detailed below. Class Counsel will transfer this amount to the Class Administrator within ten (10) days of receiving the Gross Settlement Amount from Defendants for deposit into a Qualified Settlement Fund Account.

    i. The Class Administrator shall distribute **$36,000.00** as incentive payments to the Named Plaintiffs for the substantial additional time, work, and risk they assumed in that role. This amount will be distributed to the Named Plaintiffs within ten (10) days of the Class Administrator's receipt of the allocated portion of the Gross Settlement Amount in the following manner:

        1. Jose Pineda: $12,000

        2. Marco Lopez: $8,000

        3. Jose Montenegro: $8,000

        4. Jose Hernandez: $8,000

    ii. The Class Administrator shall distribute from the remaining **$325,370.57** ("Class Distribution") to each Class Member a *pro rata* share of their estimated damages based on the Expert Report of David Breshears, CPA/CFF ("Expert Report"), submitted to the Court as Docket No. 424-1.

    iii.  The Class Distribution will be allocated to Class Members based on Exhibit 2B, "Summary Based on 60% Reporting to / back to Skinner HQ (with Travel Estimates)" and Exhibit 5, "Uniform Deductions" to the Expert report.

    iv.  Exhibit 2B estimates $425,011.59 in potential lost wages for travel and reporting time for the Reporting Class and the Collective. Exhibit 5 estimates $17,431.50 in potential lost wages for the Uniform Class. Together, the total estimated potential lost wages for all Plaintiffs is thus $442,443.09. The Class Distribution represents **73.5%** of the estimated total lost wages ("Percentage Paid"). As such, the Class Administrator will distribute **73.5%** of the amounts estimated in Exhibits 2B and 5 of the Expert Report to each Class Member ("Individual Distribution Amounts"). If any Class Member opts not to participate in this Settlement Agreement during the Opt-Out period, the amount owed to that Class Member will be added to the Class Distribution to increase the Percentage Paid.

  15.  The Class Administrator shall use the following method to distribute the Class Distribution:

  (a)  Within ten (10) days of receipt of the Individual Distribution Amounts from Class Counsel, the Class Administrator will send checks in the Individual Distribution Amounts with a form cover letter via first-class regular U.S. Mail using the address determined during the Class Notice process to be the most recent address for each Class Member who has not opted-out of the Settlement ("Participating Class Member"). The Individual Distribution Amounts shall be distributed automatically without the need for any claim filed by a Participating Class Member.

  (b)  If an Individual Distribution Amount is returned because of an incorrect address, the Class Administrator will promptly, and not longer than ten (10) days from receipt of the returned Individual Distribution Amount, search for a more current address for the Participating

Class Member and re-mail the Individual Distribution Amount to the Participating Class Member. The Class Administrator will be responsible for taking reasonable steps, consistent with its agreed-upon job parameters, court orders, and fee, as agreed to with the Class Counsel and according to the following deadlines, to trace the mailing address of any Participating Class Member for whom an Individual Distribution Amount is returned by the U.S. Postal Service as undeliverable. These reasonable steps shall include, at a minimum, the tracking of all undeliverable mail; performing address searches for all mail returned without a forwarding address; and promptly re-mailing to Participating Class Members for whom new addresses are found. The Class Administrator shall keep a record of all returned Individual Distribution Amounts and all subsequent re-mailings of Individual Distribution Amounts. The Class Administrator will provide a copy of this record to Class Counsel upon request.

(c) If a Participating Class Member does not cash his or her Individual Distribution Amount within 120 days after it is last mailed to him or her, the amount of that check will be distributed to Rhode Island Center for Justice, and the Participating Class Member nevertheless will remain bound by the Settlement Agreement. If a Participating Class Member has not cashed the Individual Distribution Amount within ninety (90) days after its last mailing, the Class Administrator will send the Participating Class Member a letter informing him or her that unless the check is cashed in the next thirty (30) days, it will expire and become non-negotiable, and offer to replace the check if it was lost or misplaced, but not cashed.

## COURT APPROVAL

16. **Preliminary Approval.**

(a) Plaintiffs will move the Court for an order giving Preliminary Approval of the Settlement, approving the Class Notice, and setting a date for the Final Approval Hearing.

Defendants will either join or not oppose said Motion. The motion will also seek approval of the Court for the appointment of Optime Administration, LLC as Class Administrator.

(b) Should the Court decline to preliminarily approve the Settlement Agreement, the Parties shall promptly and in good faith attempt to revise the Settlement Agreement to address any concerns raised by the Court.

17. **Notice to Class Members.** After the Court enters its order granting Preliminary Approval of the Settlement, every Class Member will be provided with the Class Settlement Notice in the form approved by the Court. The Class Notice will be provided in English, Spanish, and Portuguese.

(a) Defendants shall provide the Class Administrator with the last known address for each Class Member from Defendant Skinner Service's employment records as soon as possible, and in no event later than ten (10) days after the Court enters Preliminary Approval. Plaintiffs shall provide the Class Administrator with its mailing lists from prior notices to the Reporting and Uniform Classes, as well as the Collective, in this case as soon as possible, and in no event later than ten (10) days after the Court enters Preliminary Approval.

(b) Using best efforts to mail it as soon as possible, and in no event later than ten (10) days after receiving the information listed in the preceding paragraph from the Plaintiffs, the Class Administrator will mail the Class Notice to all Class Members via first-class regular U.S. Mail using the address determined in good faith to be the most recent address for each Class Member from the information provided by the Plaintiffs and Defendants.

(c) If a Class Notice is returned because of an incorrect address, the Class Administrator will promptly, and not longer than ten (10) days from receipt of the returned mail, search for a more current address for the Class Member and re-mail the Class Notice to the Class

Member. The Class Administrator will be responsible for taking reasonable, prompt steps, consistent with its agreed-upon job parameters, court orders, and fee, as agreed to with the Class Counsel and according to the following deadlines, to trace the mailing address of any Class Member for whom a Class Notice is returned by the U.S. Postal Service as undeliverable. These reasonable steps shall include, at a minimum, the tracking of all undeliverable mail; performing address searches for all mail returned without a forwarding address; and promptly re-mailing to Class Members for whom new addresses are found. The Class Administrator shall keep a record of all returned Class Notices and all subsequent re-mailings of Class Notices. The Class Administrator will provide a copy of this record to Class Counsel on a weekly basis.

(d) Not later than the date by which the Parties file their joint motion for Final Approval of the Settlement, the Class Administrator will serve on the Parties and file with the Court a declaration of due diligence setting forth its compliance with its obligations under this Settlement Agreement. Prior to the Final Approval Hearing, the Class Administrator will supplement its declaration of due diligence if any material changes occur from the filing of its prior declaration.

18. **Comments on or Objections to Settlement; Opt-Outs from Settlement.** Class Members may submit objections to the Settlement or Opt-Out from the Settlement pursuant to the following procedures:

(a) **Comments on or Objections to Settlement.** The Class Notice will provide that Members who wish to comment on or object to the Settlement must file with the Court and serve on counsel for the Parties not later than thirty (30) days after the Class Administrator mails the Class Notice a written comment on or objection to the Settlement setting forth the grounds for the comment or objection. The statement will also indicate whether the

Class Member intends to appear and comment or object at the Fairness Hearing; failure to so indicate will constitute a waiver of the right to appear at the hearing. A Class Member who does not file and serve a written comment or objection in the manner and by the deadline specified above will be deemed to have waived any comments or objections and will be foreclosed from making any comments or objections (whether by appeal or otherwise) to the Settlement.

    (b)  **Opt-Out from the Settlement.** The Class Notice also will provide that Class Members who wish to exclude themselves from the Settlement must mail to the Class Administrator not later than thirty (30) days after the Class Administrator mails the Class Notice a signed Opt-Out notice. Any person who sends in a signed Opt-Out notice will become a "Non-Participating Class Member" and will not participate in or be bound by the Settlement. A Class Member who does not complete and mail a timely and valid Opt-Out notice in the manner and by the deadline specified above will automatically become a Participating Class Member and be bound by all terms and conditions of the Settlement, including its release of claims, if the Settlement is approved by the District Court.

    (c)  **Report.** Not later than seven (7) days after the deadline for submission of Opt-Out notices, the Class Administrator will provide the Parties with a complete and accurate list of all Participating and Non-Participating Class Members.

  19. **No Solicitation of Comment, Objection, or Opt-Out.** Neither the Parties nor their respective Counsel will solicit or otherwise encourage directly or indirectly any Class Member to comment on or object to the Settlement or to opt-out of the Settlement.

  20. **Final Approval.**

(a)     Plaintiffs will move the Court for an order giving Final Approval of the Settlement and setting a date for the Final Approval Hearing within fourteen (14) days from the opt-out and objection deadline. Defendants will join or not oppose said Motion.

(b)     Should the Court decline to finally approve the Settlement Agreement, the Parties shall promptly and in good faith attempt to revise the Settlement Agreement to address any concerns raised by the Court.

## ADDITIONAL TERMS

21.     **Effective Date.** The effective date of this settlement shall be the date on which the Court grants Final Approval of the Settlement in this Case.

22.     **Release of Claims.** Upon final Approval of this Settlement Agreement, the Parties, each for themselves and on behalf of their heirs, predecessors in interest, successors, assigns, affiliates, managers, members, officers, directors, partners, agents, servants, representatives, insurers, devisees, assigns, attorneys, executive directors, administrators, trustees, trusts, and funds, past and present, hereby releases and forever discharges the other, and their heirs and predecessors in interest, successors, assigns, affiliates, officers, directors, partners, agents, servants, representatives, insurers, devisees, assigns, attorneys, executive directors, administrators, trustees, trusts, and funds, past and present, from all claims, causes of action, suits, liabilities and any and all other claims of every kind through the date of this Settlement Agreement's execution, excepting those claims arising under this Settlement Agreement. Final Approval of this Settlement Agreement also resolves any and all outstanding disputes in this case, including but not limited to any claim for attorneys' fees or damages based on any prior Court order in this case. The Parties agree that they will not file any appeals of any aspect of this case prior to or after the Court's Final Approval of this Settlement Agreement, unless the Parties

are unable to secure Final Approval of this or a modified Settlement Agreement using their good-faith best efforts.

23. **Non-Admission.** In entering into this Agreement, neither Defendants nor Plaintiffs admit to any fault, wrongdoing, violation of law, or liability and nothing in this Agreement shall be construed as such an admission. This Agreement is entered into solely for the purpose of compromising disputed claims.

24. **Non-Disparagement.** The Named Plaintiffs agree to not disparage Defendants. Defendants agree not to disparage the Named Plaintiffs. A breach of this provision shall not impact any other provision of this Agreement or the Parties' duties thereunder.

25. **Destruction of Documents.** The Parties and their Counsel will make good-faith, reasonable efforts to destroy all documents produced by the other Party during discovery in this case within thirty (90) days of the release of the full Gross Settlement Amount to the Plaintiffs. A breach of this provision shall not impact any other provision of this Agreement or the Parties' duties thereunder.

26. **Integrated Agreement.** After this Agreement is signed and delivered by all Parties and their counsel, this Agreement will constitute the entire agreement between the Parties relating to the settlement, and it will then be deemed that no oral representations, warranties, covenants, or inducements have been made to any Party concerning this Agreement other than the representations, warranties, covenants and inducements expressly stated in this Agreement.

27. **Construction.** The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive, arms-length negotiations between the Parties, and this Settlement Agreement shall not be construed in favor of or against any Party by

reason of the extent to which any Party or their counsel participated in the drafting of this Settlement Agreement.

28. **Modification of Agreement.** This Agreement, and any and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their successors-in-interest.

29. **Applicable Law.** All terms and conditions of this Agreement will be governed by and interpreted according to the laws of the State of Massachusetts, without giving effect to any conflict of law principles or choice of law principles.  The Court will retain jurisdiction to enforce this Settlement Agreement.

30. **Notices.** Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

>To Plaintiffs
>
>Nicole Horberg Decter
>Nathan Goldstein
>Jasper Groner
>Paige McKissock
>**SEGAL ROITMAN, LLP**
>33 Harrison Avenue, 7th Floor
>Boston, MA 021111
>Telephone: (617) 742-0208
>Facsimile: (617) 742-2187
>
>
>To Defendants
>
>Gregory J. Aceto
>Michael B. Cole
>**ACETO, BONNER & PRAGER, P.C.**
>One Liberty Square, Suite 410
>Boston, MA  02109

Telephone: (617) 728-0888

31. **Execution in Counterpart.** This Agreement may be executed in counterparts and by facsimile signatures, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed and original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding and effective as to all parties upon Final Approval by the Court.  The digital version of this Settlement Agreement shall be considered an original version of the instrument, coextensive with the hardcopy version.

32. The Settlement Agreement shall be binding on and will inure to the benefit of the Parties and their respective successors and assigns.

33. Each of the persons signing on behalf of any of the Parties hereby warrants and represents that s/he has been duly and legally authorized to execute this Settlement Agreement on behalf of such Party, with the effect of binding all the Parties to this Settlement Agreement. All Parties warrant and represent that the person or persons signing below have full authority and power to bind their respective parties to this Settlement Agreement.

In witness whereof, the Parties hereto knowingly and voluntarily executed this Settlement Agreement between the Plaintiffs and Defendants as of the date(s) set forth below:

**Plaintiffs and Class Representatives**

_____        _____
**José Pineda**                                                                             Dated

_____   _____
**Marco Lopez**                   Dated

_____   _____
**José Montenegro**               Dated

_____   _____
**José Hernandez**                Dated

**<u>Defendants</u>**

_____   _____
**Skinner Services, Inc.**        Dated
Name:
Title:

_____   _____
**Thomas Skinner**                Dated

_____   _____
**David Skinner**                 Dated

_____   _____
**Sandro Santos**                 Dated